**LFG, LLC, d/b/a Zap Futures, Plaintiff,**

v.

**ZAPATA CORPORATION and Zap Corp., Defendants.**

**No. 98 C 5096.**

United States District Court,
N.D. Illinois,
Eastern Division.

Jan. 19, 1999.

William John Nissen, Andrew L. Goldstein, Erick C. Howard, Sidley & Austin, Chicago, IL, for Plaintiff.

James R. Ferguson, Sonnenschein, Nath & Rosenthal, Chicago, IL, Donald W. O'Brein, Jr., Woods, Oviatt, Gilman, Sturman & Clarke, Rochester, NY, for Defendants.

## MEMORANDUM OPINION

GRADY, District Judge.

Before the court is the defendants' motion to dismiss the complaint pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. For the reasons stated in this opinion, the motion is denied.

## BACKGROUND

Viewed in the plaintiff's favor, the relevant facts are as follows. Plaintiff LFG, LLC, doing business as Zap Futures, is an Illinois limited liability company with its principal place of business in Chicago. It is an electronic brokerage firm involved in the trading of commodity futures and options over the internet.[1] Zap Futures provides on-line trading, on-line stock and commodity futures and options research, quotes, and financial news. It uses the trademark "ZAP" in connection with its goods and services and has maintained a web site with the internet domain address "zapfutures.com" since 1996.[2]

Defendant Zapata Corporation ("Zapata") is a Delaware corporation with its principal place of business in Houston, Texas. In early 1998, Zapata developed a plan to create an internet "portal" through which users could access the internet. Accordingly, Zapata formed defendant Zap Corp. in April 1998 as a wholly-owned subsidiary to conduct Zapata's internet business.[3] Zap Corp. is a Nevada corporation with its principal place of business in Rochester, New York. Its computer server is in New York as well.

In June 1998, defendants launched their web site (the "Zap site"), which uses the domain address "zap.com." Internet users in the United States and most of the world can access the Zap site. At the time this action was brought, the site was structured as a "portal," offering a list of connections to other web sites by way of "hyperlinks."[4] Some of the linked sites merely provided information; others were interactive—for example, allowing users to purchase music or make travel reservations. The Zap site connected users to the linked sites at no charge; in addition, it offered users the opportunity to sign up for Zapata's mailing list and the ability to make the Zap site a user's "starting page" at no charge.[5]

In early summer 1998, Zap Corp. entered into non-binding letters of intent to acquire the web sites hyperlinked to the Zap site. Thereafter, and until some point after this suit was commenced, the Zap site described that list of hyperlinks as "OUR SITES." In mid-October 1998, however, Zap Corp. announced that it would not be proceeding with the acquisitions contemplated by the letters of intent and withdrew the letters. The Zap site as it currently appears provides links to only two sites, "Word" and "Charged," the only other web sites Zap Corp. owns.[6]

---

1. The "internet" is a term describing a giant global network of millions of computers. These computers are linked principally by modems, which transmit electronic data over telephone lines. The internet is a means of exchanging information very rapidly. *See Inset Sys., Inc. v. Instruction Set, Inc.,* 937 F.Supp. 161, 163 (D.Conn.1996); *Maritz, Inc. v. Cybergold, Inc.,* 947 F.Supp. 1328, 1330 (E.D.Mo.1996).

2. A web site is an address on the internet which permits users to exchange digital information with a "host" computer. *See Bensusan Restaurant Corp. v. King,* 937 F.Supp. 295, 297 n. 1 (S.D.N.Y.1996). A domain address is similar to a street address in that internet users use it to "find" another user. *See Inset,* 937 F.Supp. at 163.

3. Because Zap Corp. conducts the business of its parent, Zapata, we refer to Zap Corp. and Zapata collectively as "defendants" (as do the parties in their briefs).

4. "Hyperlinks" are "highlighted text or images that, when selected by the user, permit him to view another, related Web document." *Shea v. Reno,* 930 F.Supp. 916, 929 (S.D.N.Y. 1996).

5. A "starting page" (or "home page") is simply the first screen of a web site to which an internet user is linked when logging on to the internet. Some web sites consist of only one page; others are made up of multiple pages.

6. "Word" and "Charged" are webzines, which are internet magazines.

Three of the web sites formerly listed on the Zap site under the heading "OUR SITES" were "Starting Point," "Daily Stocks," and "Stocksheet." "Starting Point" provides access to information about stocks, commodities, and related investments, among other things. "Daily Stocks" and "Stocksheet" offer stock and commodity quotes, charts, news, and research. At least three of plaintiff Zap Futures' competitors advertised their services on one of these three web sites.

Zap Futures brought this action in August 1998, alleging that defendants had violated Sections 43(a) and 43(c) of the Lanham Act, 15 U.S.C. § 1125(a), (c), in connection with their Zap site activities. Plaintiff also alleges common law unfair competition and violations of the Illinois Deceptive Trade Practices Act, the Illinois Consumer Fraud and Deceptive Business Practices Act, and the Illinois Anti–Dilution Act. The gist of Zap Futures' claim involves defendants' use of the name "Zap" and the domain name "zap.com" in connection with stocks and commodities trading. Plaintiff alleges that defendants' activities will likely cause trade and public confusion and dilution of the quality of Zap Futures' "ZAP" mark. Zap Futures seeks to enjoin defendants' alleged trademark infringement, trademark dilution, and unfair competition, and also seeks damages. Defendants have moved to dismiss this suit for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.

### DISCUSSION

The standards by which the court must evaluate a 12(b)(2) motion to dismiss are straightforward. The plaintiff bears the burden of providing sufficient evidence to establish a *prima facie* case for personal jurisdiction. *RAR, Inc. v. Turner Diesel, Ltd.,* 107 F.3d 1272, 1276 (7th Cir.1997); *Michael J. Neuman & Assocs. v. Florabelle Flowers, Inc.,* 15 F.3d 721, 724 (7th Cir.1994); *Arena Football League, Inc. v. Roemer,* 947 F.Supp. 337, 339 (N.D.Ill. 1996). The jurisdictional allegations in the complaint are taken as true unless contro-

verted by the defendant's affidavits. Any conflicts among affidavits must be resolved in the plaintiff's favor. *Turnock v. Cope,* 816 F.2d 332, 333 (7th Cir.1987); *Cherry Communications, Inc. v. Coastal Tel. Co.,* 906 F.Supp. 452, 454 (N.D.Ill.1995); *Czarobski v. St. Kieran's Church,* 851 F.Supp. 1219, 1220 (N.D.Ill.1994).

■ In federal question cases, a *prima facie* case for personal jurisdiction has two elements. First, the plaintiff must demonstrate that bringing the defendant into court comports with Fifth Amendment Due Process. Second, the plaintiff must show that the defendant is amenable to service of process. *See United States v. De Ortiz,* 910 F.2d 376, 381–82 (7th Cir. 1990). As we discuss below, Zap Futures has met both requirements.

### A. Due Process

■ A court's assertion of personal jurisdiction must comport with " 'traditional notions of fair play and substantial justice' " to satisfy the Due Process Clause. *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)). The touchstone of the due process analysis is whether the defendant purposefully established "minimum contacts" with the political unit encompassing the forum. *Asahi Metal Indus. Co. v. Superior Court of Cal.,* 480 U.S. 102, 108–09, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). Even defendants not physically present in the jurisdiction have sufficient "minimum contacts" if they do some act by which they purposefully avail themselves of the privilege of conducting activities in the forum state, *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), and if they "should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Due process also requires that the action arise from or relate to the defendant's contacts with the forum state. *Burger King Corp. v. Rudzewicz,*

471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *Heritage House Restaurants, Inc. v. Continental Funding Group, Inc.*, 906 F.2d 276, 281 (7th Cir. 1990). Finally, the court should consider whether it is reasonable to require the nonresident defendant to litigate in the forum state, considering factors such as the relative interests of the litigants, the forum's interest in litigating the dispute, and " 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies.' " *Burger King*, 471 U.S. at 477, 105 S.Ct. 2174.

■■■ Our threshold inquiry into "minimum contacts" is not complicated. Indeed, most challenges to personal jurisdiction in federal question cases revolve around the defendant's amenability to service because the due process requirement is easily satisfied. *See Vlasak v. Rapid Collection Sys., Inc.*, 962 F.Supp. 1096, 1099 (N.D.Ill.1997) (Grady, J.); *Merrill Lynch Business Financial Services, Inc. v. Marais*, No. 94 C 3316, 1995 WL 608573, at *4 (N.D.Ill. Oct.12, 1995). In federal question cases, the defendant must only have sufficient contacts "with the United States as a whole rather than any particular state or other geographic area." *De Ortiz*, 910 F.2d at 382; *see also United Rope Distribs., Inc. v. Seatriumph Marine Corp.*, 930 F.2d 532, 534 (7th Cir.1991) ("When a national court applies national law, the due process clause requires only that the defendant possess sufficient contacts with the United States."). A defendant "has sufficient contacts with the United States to support the fairness of the exercise of jurisdiction over him by a United States court" if he resides or conducts business on American soil. *See Fitzsimmons v. Barton*, 589 F.2d 330, 333 (7th Cir.1979). Here, defendants were incorporated and do business in the continental United States. Thus, their contacts with the United States satisfy due process.

## B.   Amenability to Service

■■■ Minimum contacts with the United States are necessary, but not sufficient, to authorize a district court's assertion of personal jurisdiction. A defendant must also be amenable to service of process. *See Omni Capital Intern., Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987) (holding that personal jurisdiction requires both "a constitutionally sufficient relationship between the defendant and the forum" and "a basis for the defendant's amenability to service of summons"). Rule 4(k) of the Federal Rules of Civil Procedure provides that service of a summons is effective to establish jurisdiction over the person of a defendant (1) who could be subjected to the jurisdiction of a court in the state in which the district court is located, or (2) when authorized by a statute of the United States.

■■■ This case involves the Lanham Act, which does not authorize nationwide service of process. Therefore, defendants' amenability to service is governed by the Illinois long-arm statute, 735 Ill.Comp. Stat.Ann. 5/2–209(a). The Illinois long-arm statute provides that a person is subject to the jurisdiction of Illinois courts as to any cause of action arising from certain specified acts. And as of September 7, 1989, an Illinois state court also may exercise jurisdiction "on any other basis now or hereafter permitted" by the state and federal constitutions. 735 Ill.Comp.Stat.Ann. 5/2–209(c). This lawsuit was filed after that date, so the court may analyze this jurisdictional issue under § 2–209(c). See *FMC Corp. v. Varonos*, 892 F.2d 1308, 1311 n. 5 (7th Cir.1990). Because § 2–209(c) authorizes personal jurisdiction to the constitutional limit, the statutory analysis collapses into a due process inquiry, and we need not consider whether defendants engaged in any of the acts enumerated in the long-arm statute. *See Dehmlow v. Austin Fireworks*, 963 F.2d 941, 945 (7th Cir.1992).

Thus, we return to the "minimum contacts" analysis of *International Shoe* and its progeny. Defendants contend that they should not be haled into court in Illinois because they did not "purposefully enter" Illinois in any "substantial way."

They argue that their web site provides no basis for a finding of "purposeful entry" into Illinois, especially because they never completed the purchase of the investment-related web sites to which the Zap site formerly provided hyperlinks. Defendants emphasize that neither Zapata nor Zap Corp. is registered to do business in Illinois as a foreign corporation, maintains an office in Illinois or has any employees in the state, sells a product or service here, owns or leases Illinois property, or maintains a bank account here.

■■■■ This case involves defendants' internet site. Because internet communications technology has developed rapidly over the last several years, internet-based claims of personal jurisdiction are fairly new. Cases that have dealt with the issue can be grouped into three categories:

The first category includes cases where defendants actively do business on the Internet. In those instances, personal jurisdiction is found because defendants "enter[ ] into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet." The second category deals with situations "where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site." The third category involves passive Web sites; *i.e.*, sites that merely provide information or advertisements to users. Districts [sic] courts do not exercise jurisdiction in the latter cases

because "a finding of jurisdiction ... based on an Internet web site would mean that there would be nationwide (indeed, worldwide) personal jurisdiction over anyone and everyone who establishes an Internet web site...."

*Weber v. Jolly Hotels,* 977 F.Supp. 327, 333 (D.N.J.1997) (quoting *Zippo Mfg. Co. v. Zippo Dot Com, Inc.,* 952 F.Supp. 1119, 1124 (W.D.Pa.1997); *Hearst Corp. v. Goldberger,* No. 96 Civ. 3620, 1997 WL 97097, at *1 (S.D.N.Y. Feb.26, 1997)). Defendants attempt to place the Zap site in category three by repeatedly describing it as essentially "passive," but we disagree with this characterization.

■■■ A full explanation requires a brief summary of internet portals and their unique function. Portals are "super" web sites that provide a wide variety of services, aiming to be "one-stop shops" for internet needs. Portals typically offer access to internet search engines, e-mail accounts, discussion groups, web sites categorized by topic, and directories, among other things—all free to the user. Portals provide the services at no cost to internet users, and they generate their income by selling online advertising space. *See* Kim Komando, *Internet Portals Open Sites for 1–Stop Surfing,* Ariz. Republic, July 27, 1998, at E2.

Given the nature and function of internet portals, it is not accurate to label them as "passive." [7] We cannot say that portals fit well within the existing internet/personal jurisdiction framework. As far as we can tell, no court has dealt with the issue of personal jurisdiction in relation to an internet "portal" like the Zap site.[8] But

---

**7.** In characterizing the Zap site as "passive," defendants emphasize the fact that their service of connecting internet users to other web sites generated no revenue for them. But there is no doubt that defendants intended for this service to generate revenue eventually. Providing free links to other web sites attracts more users to a portal, a high concentration of users attracts advertisers, and advertisements generate revenue.

**8.** Thus, most of the internet/personal jurisdiction cases cited by the parties are factually

distinguishable in that they involved web sites that were not portals and did not have any of the qualities of a portal.

While *Maritz, Inc. v. Cybergold, Inc.,* 947 F.Supp. 1328 (E.D.Mo.1996), did not involve an internet portal, it bears similarity to the case at hand. In *Maritz,* the defendant's web site provided information about a forthcoming electronic mailing list service that would forward to users advertisements that matched their selected interests. Defendant planned to charge advertisers for access to the internet users on its mailing list. *Id.* at 1330. The

the Zap site is somewhat analogous to a category two site—it is designed for user interaction; more importantly, its success hinges on the number of users interacting with it.

We move on to examine defendants' contacts with Illinois, through the Zap site and otherwise. For two reasons, we find that an Illinois court would exercise personal jurisdiction over defendants within constitutional bounds.

First, plaintiff points out that the Zap site included a "Contact" page on which users could send e-mail to Zapata and also join Zapata's mailing list. This page also provided Zapata's address, phone number, and fax number. Twenty-five Illinois residents requested to be placed on Zapata's mailing list. This contact with Illinois residents favors the exercise of personal jurisdiction over defendants. Defendants created the mailing list for the purpose of developing contacts with internet users, seeking to provide further information about themselves. Portal sites intend to create the feeling of community, a kind of "internet neighborhood," to ensure repeated and long visits by users—which makes user contacts extremely important to their underlying business.

Although it is unclear whether defendants actually communicated with those who had requested to be on the mailing list, it is clear that they intended eventually to do so. The availability of defendants' mailing list was entirely within their control. By failing to prevent Illinois residents from being put on their mailing list, defendants made the choice to establish contacts with and "enter" Illinois. *See Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1126 (W.D.Pa.1997) ("If a corporation determines that the risk of being subject to personal jurisdiction in a particular forum is too great, it can choose to sever its connection to the state.").[9]

A second reason for exercising personal jurisdiction is defendants' non-internet contact with Illinois.[10] Zap Corp. entered into a letter of intent to buy Starting Point, L.L.C., an Illinois resident that operated the "Starting Point" web site. During negotiations, Zap Corp. sent correspondence to Starting Point, L.L.C. in Illinois.

Defendants argue that they never completed the purchase of Starting Point, L.L.C. and consequently never owned or operated the "Starting Point" web site (or the other two trading sites). But the ownership of these linked sites is not relevant to our analysis. Defendants purposefully reached out to an Illinois company and

---

district court concluded that it had personal jurisdiction over the defendant. *Id.* at 1334.

While the "mailing list" concept is not identical to that of portals, it is similar to their advertising aspects. Instead of sending advertisements to users, internet portals themselves contain advertisements and also link users to other sites containing advertisements. They generate income in the same fashion, however—from advertisers, not from internet users. Moreover, in both instances, the success of the service critically depends on developing a large number of users.

9. Defendants argue that "[i]t simply does not follow that the defendants, by failing to restrict the accessibility of their web site, made a 'conscious decision' to direct their activities at Illinois residents." Defendants contend that they "did not direct their activities at the residents of any state." Defendants' Reply Memorandum in Support of Their Motion to Dismiss for Lack of Personal Jurisdiction at 9.

But this argument fails to address the fact that defendants invited the residents of all states to be on their mailing list and contemplated direct communications with them.

We emphasize that we do not base our holding on the mere fact that the Zap site itself was accessible in Illinois. Therefore, we do not address plaintiff's argument that defendants' web site is "in" Illinois for jurisdictional purposes.

Because we conclude that defendants purposefully entered Illinois, we do not reach plaintiff's argument that "entry is not required to establish personal jurisdiction over [defendants] in Illinois." Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss for Lack of Personal Jurisdiction at 11.

10. While this contact related to the purchase of an internet web site, it is "non-internet" in that it was not transacted via the internet.

created a business relationship with it, expecting to buy the company. The object of the transaction was to enhance defendants' reputation and presence among internet users. Moreover, on the Zap site, defendants referred to "Starting Point" as "their" site. Thus, the business relationship established with Starting Point, L.L.C. is sufficient to justify exercising personal jurisdiction. *See Resuscitation Techs., Inc. v. Continental Health Care Corp.,* No. IP 96–1457–C–M/S, 1997 WL 148567 (S.D.Ind. Mar.24, 1997) (holding that electronic mail, telephone, standard mail, and fax contacts, in the context of negotiations and a non-binding letter of intent, were sufficient to confer personal jurisdiction); *Medline Industries, Inc. v. United Western Medical Centers,* No. 96 C 4390, 1996 WL 672257, at *2 (N.D.Ill. Nov.14, 1996) ("Even a relationship based solely on mail and telephone communications can justify jurisdiction of a defendant.").

Defendants contend that their contacts with Illinois are not substantial enough to confer personal jurisdiction. However, the minimum contacts test does not focus on the quantity of contacts with a forum. The main factor in the minimum contacts inquiry is "foreseeability." *Heritage House Restaurants, Inc. v. Continental Funding Group, Inc.,* 906 F.2d 276, 283 (7th Cir.1990). Simply put, are the defendant's contacts with the forum state such that it can reasonably anticipate being required to defend itself there? *See World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Here, defendants purposefully reached out to Illinois through the mailing list on the Zap site and their relationship with Starting Point, L.L.C., an Illinois resident. Based on these deliberate connections with Illinois, defendants had fair warning that they might be called before an Illinois court.

Defendants assert that, even if their activities were directed toward Illinois, plaintiff cannot show that its claims arise out of these forum-related activities. But in fact, the correct standard is "arise out of *or relate to.*" *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (emphasis added) [11]. Defendants' argument is unpersuasive. Zap Futures' trademark infringement, dilution, and unfair competition claims are based on the affiliation between the use of the term "Zap" on defendants' web site and the content of the "Starting Point" (as well as the "Daily Stocks" and "Stocksheet") web site. Plaintiff alleges that defendants' infringing activity includes the Zap site's hyperlinks to financial web sites such as "Starting Point." Defendants' relationship and letter of intent with Starting Point, L.L.C. clearly relate to this claim; in fact, this very relationship and the resulting representation to the public that "Starting Point" belonged to defendants are central to plaintiff's claim.[12] Plaintiff also alleges that defendants' use of plaintiff's mark confuses the public, which includes internet users who have established contacts with defendants through the Zap site mailing list. Thus, the contacts with Illinois residents established through the Zap site mailing list also relate to plaintiff's claims.

Finally, although the parties did not address this issue, we consider whether it is reasonable to require defendants to litigate in Illinois. One consideration is the defendant's interest in avoiding burdensome and

---

11. Although the Illinois long-arm statute does not use the phrase "relate to," it does provide that an Illinois state court may exercise jurisdiction "on any other basis now or hereafter permitted" by the state and federal constitutions. 735 Ill.Comp.Stat.Ann. 5/2–209(c). This statutory provision is broad enough to include the "relate to" portion of the *Burger King* test.

12. During the period when the letters of intent with the hyperlinked web sites were in effect, the Zap site listed the sites under the heading "OUR SITES." While Zap Corp. did not actually own the hyperlinked sites, the heading implied otherwise. The list included "Starting Point."

gravely inconvenient litigation. While Zapata and Zap Corp's principal places of business are in, respectively, Texas and New York, defendants have not shown (or even argued) that they are burdened by litigating in this forum. Furthermore, the burden placed on the defendant must be considered in light of the plaintiff's interest in obtaining convenient and effective relief. *See World–Wide Volkswagen,* 444 U.S. at 292, 100 S.Ct. 559; *see also Burger King,* 471 U.S. at 477, 105 S.Ct. 2174 (observing that considerations such as the plaintiff's interest in obtaining relief "sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required"). Because Zap Futures is based in Illinois, much of its injury from the alleged infringement and dilution is likely to occur in Illinois. Zap Futures therefore has a strong interest in adjudicating its claims in Illinois. In addition, Illinois has a strong interest in adjudicating disputes that involve the alleged infringement of an Illinois limited liability company's trademark. The court concludes that these factors weigh in favor of exercising personal jurisdiction over defendants in Illinois.

## CONCLUSION

For the reasons outlined in this opinion, defendants' motion to dismiss plaintiff's complaint for lack of personal jurisdiction is denied.