**CATERPILLAR INC., Plaintiff,**

v.

**MISKIN SCRAPER WORKS, INC., Defendant.**

No. 02–1328.

United States District Court, C.D. Illinois.

April 8, 2003.

---

Daniel L. Johns, Westervelt, Johnson Nicoll & Keller, Peoria, IL, Mark S. Sommers, Linda K. McLeod, Christina J. Hieber, Finnegan, Henderson, Farabow, Garrett & Dunner LLP, Washington, DC, for Plaintiff.

David G. Lubben, Joshua A. Rodine, Davis & Campbell, Peoria, IL, for Defendant.

## ORDER

McDADE, Chief Judge.

Before the Court is Magistrate Judge Cudmore's Report and Recommendation [Doc. # 14], which recommends denying Defendant Miskin Scraper Works, Inc.'s (hereinafter, "Miskin") Motion to Dismiss for Lack of Jurisdiction [Doc. # 7]. Miskin has filed timely objections to the Report and Recommendation.

Accordingly, a district court reviews *de novo* any portion of a magistrate judge's report and recommendation to which written objections have been made. *See* Fed. R.Civ.P. 72(b). "The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions." *Id.*

The present matter involves Caterpillar's trade dress and Miskin's alleged use of an infringing trade dress in violation of various Illinois state laws and the Federal Trademark Act, 15 U.S.C. § 1051, *et seq.* Caterpillar alleges consumer confusion of the two companies, dilution of Caterpillar's trade dress and seeks to halt Miskin's use of the offending trade dress.[1]

Miskin tenders objections to factual conclusions contained in Judge Cudmore's Report and Recommendation but fails to indicate their importance or relevance to Judge Cudmore's decision; accordingly, any argument based on these factual challenges is waived. Miskin's legal objections to Judge Cudmore's decision are limited to Judge Cudmore's determination that Caterpillar's suit satisfied the "effects test"

---

1. Caterpillar also seeks monetary damages, costs, and attorneys' fees but the inclusion of these elements does not factor into the Court's decision.

announced in *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) as applied by the Seventh Circuit in *Indianapolis Colts, Inc. v. Baltimore Football Club, Ltd. Partnership,* 34 F.3d 410 and *Janmark, Inc. v. Reidy,* 132 F.3d 1200 (7th Cir.1997); thereby giving the Court personal jurisdiction over Miskin. Miskin argues that this determination by "[t]he Magistrate Judge relieves Caterpillar of any burden to show that Miskin had allegedly done more than brought about an injury to Caterpillar." In other words, Miskin's argument is that personal jurisdiction requires more than merely showing that Miskin's alleged infringing activities outside of Illinois caused injury to Caterpillar in Illinois.

■ The Federal Trademark Act does not authorize national service of process on nonresident defenders, therefore, the Court must apply the Illinois long-arm statute to determine if Miskin is amenable to service of process. *See* Fed.R.Civ.P. 4(k)(1)(A). The Illinois long-arm statute authorizes jurisdiction on any basis permitted by the Illinois Constitution and the Constitution of the United States of America. *See* 735 ILCS 5/2–209(c). Illinois law allows the exercise of personal jurisdiction over defendants if doing so comports with the due process provision of the federal and Illinois constitutions. *See RAR, Inc. v. Turner Diesel, Ltd.,* 107 F.3d 1272, 1276 (7th Cir.1997).

Relevant jurisprudence of the Seventh Circuit has not been consistent in the verbiage used to determine personal jurisdiction. In the latest case of *Janmark, Inc. v. Reidy,* 132 F.3d 1200, 1202 (7th Cir.1997)(citing Calder), a panel of the court announced that "there can be no serious doubt after *Calder v. Jones* that the state in which the victim of a tort suffers the injury may entertain a suit against the accused tortfeasor." Three years earlier in *Indianapolis Colts, Inc. v.*

*Metropolitan Baltimore Football Club Ltd. Partnership,* 34 F.3d 410 (7th Cir. 1994), a different panel of the court observed that:

> In all the other cases that have come to our attention in which jurisdiction over a suit involving intellectual property [including *Calder*] was upheld, the defendant had done more than brought about an injury to an interest located in a particular state. The defendant had also "entered" the state in some fashion, as by the sale (in *Calder* ) of the magazine containing the defamatory material.

34 F.3d at 412.

■ The *Indianapolis Colts* panel proceeded to affirm the finding of the district judge that personal jurisdiction existed by holding that the nationwide broadcast of the Baltimore Colts game (available in Indiana) was the fashion in which the Baltimore Colts "entered" the state of Indiana. The teaching of *Indianapolis Colts* is that personal jurisdiction requires not only an injury in the forum state but also a showing that the defendant has "entered" the forum state in some fashion. This "entry" requirement, in the Court's view is merely a reformulation of the *Calder* requirement that personal jurisdiction depends upon the showing of some intentional, purposeful tortious conduct by the defendant outside the forum state expressly directed at the forum state. No matter the verbiage, a rose is still a rose. Seemingly heedless of this teaching, the *Janmark* panel, without discussing the "entry" requirement, simply held that causing an injury in the forum state by tortious activities of the defendant outside the forum state gave the forum state personal jurisdiction over the defendant. Can *Indianapolis Colts* and *Janmark* be harmonized to articulate an operative principle by which the issue of personal jurisdiction can be decided in our case? I think so. Ac-

cepting the primacy of the Supreme Court's teaching in *Calder* that personal jurisdiction depends upon there being some intentional and purposeful tortious conduct outside the forum state calculated to cause injury in the forum state (this feature was present in *Indianapolis Colts* as well as *Janmark,* although not discussed). In *Indianapolis Colts,* it was the televised broadcast of the Baltimore Colts football game in Indiana; and, in *Janmark,* it was the inducement of the plaintiff's New Jersey customers to stop buying mini shopping carts from the plaintiff in Illinois. Applying this principle to the case at hand, the intentional act or "entry" into Illinois by Defendant was its use of a website on the internet to advertise its trade dress infringing products.

In terms of an "entry", there seemingly is no significant difference between using the ether to televise an event nationwide or communicating by interconnected computers, commonly referred to as "the internet."[2] In both instances, an Illinois resident can access the entry if he chooses. However, given the nature of the internet and the inability to place geographical restrictions on its use as we can do with a radio or television broadcast, it does not necessarily follow that every internet entry into the forum state should give rise to personal jurisdiction. Forty years ago the Supreme Court noted in *Hanson v. Denckla* that:

> As technological progress has increased the flow of commerce between states, the need for jurisdiction has undergone a similar increase.

357 U.S. 235, 250–51, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

Technological progress has exploded since that statement was made so that today the internet makes it possible for a business to market itself to the world from a single desktop computer. *See Keelshield, Inc. v. Megaware Keel–Guard, Inc.,* 2001 WL 575833 (C.D.Ill.). The advent of the internet has necessitated further development of the law concerning the permissible scope of personal jurisdiction based on internet use. Our circuit court has not addressed the subject; however, the Second, Fifth, Sixth, Ninth, Tenth, and D.C. circuit courts have. The Fifth, Ninth, and Tenth Circuits have sanctioned the exercise of personal jurisdiction based on internet activity depending upon the level of a defendant's overall contacts with a foreign state. These courts have evaluated a defendant's internet activity via the analytic framework articulated in *Zippo Manufacturing Company v. Zippo Dot. Com. Inc.,* 952 F.Supp. 1119 (W.D.Pa. 1997). Our sister courts in the Northern District of Illinois have also signed-on to the "sliding scale" approach devised by the district court in *Zippo Manufacturing Company. See First Financial Resources v. First Financial Resources, Corp.,* No. 00 C 3365, 2000 WL 1693973 at *3 (N.D.Ill. Nov. 8, 2000)(Lanham Act); *Ameritech Services, Inc. v. SCA Promotions, Inc.,* No. 99C4160, 1999 WL 283098 at *4 (N.D.Ill. May 6, 1999); *Ty, Inc. v. Clark,* No. 99 C 5532, 2000 WL 51816 at *3 (N.D.Ill. Jan. 14, 2000); *International Star Registry of Illinois v. Bowman Haight Ventures, Inc.,* No. 98 C 6823, 1999 WL 300285 at *4, (N.D.Ill. May 6, 1999).; *LFG, LLC v. Zapata Corp.,* 78 F.Supp.2d 731, 736 (N.D.Ill.1999); *Scherr v. Abrahams,* No. 97 C 5453, 1998 WL 299678 at *4 (N.D.Ill. May 29, 1998); *Vitullo v. Velocity Powerboats, Inc.,* No. 97 C 8745, 1998 WL 246152 at *5, (N.D.Ill. April 27, 1998); and

---

**2.** New technologies are often uppercased, e.g., Phonograph. As time passes and the technology is gradually accepted, however, society generally begins to use lower case letters. *See* John Schwartz, Who Owns the Internet? You and i Do, N.Y. Times, Dec. 29, 2002, Section 4.

*Transcraft Corp. v. Doonan Trailer Corp.*, No. 97C4943, 1997 WL 733905 at *8 (N.D.Ill. Nov. 17, 1997).

To be acceptable, any approach must comport with Fourteenth Amendment constitutional due process requirements of (1) minimum contacts with the forum state; (2) the claim asserted must arise out of these contacts; and (3) the exercise of jurisdiction must be reasonable. The requirement of an "entry" in the forum state at the hands of the defendant himself satisfies the minimum contacts and protects defendants from being forced to answer for their actions in a foreign jurisdiction based on "random, fortuitous or attenuated" contacts. *See Zippo* at 1123 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984)). The reasonableness prong exists to protect defendants against unfairly inconvenient litigation. *See World–Wide Volkswagen*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

The rationale for the "sliding scale" test approach to personal jurisdiction proffered in *Zippo* for use in cases involving the internet is:

> the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the internet. This sliding scale is consistent, well-developed personal jurisdiction principles. At one end of the spectrum are situations where a defendant clearly does business over the internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involves the knowing and repeated transmission of computer files over the internet, personal jurisdiction is proper. E.g., *CompuServe, Inc. v. Patterson*, 89 F.3d 1257 (6th Cir.1996). At the opposite end are situations where a defendant has simply posted information on an internet web-

> site which is accessible to users in foreign jurisdictions. A passive website that does little more than make information available to those who are interested in it is not grounds for the exercise of personal jurisdiction. E.g., *Bensusan Restaurant Corp. v. King*, 937 F.Supp. 295 (S.D.N.Y.1996). The middle ground is occupied by interactive websites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the website.

*Zippo* at 1124.

■ Conditioning personal jurisdiction on more than a passive use of the internet is consistent with the constitutional requirement that there be an "entry" into a foreign state. The record shows that Miskin was a passive user: Miskin's webpage does not allow for direct contractual relationships and the only way it facilitates business is by providing information, advertisements and contact information. The webpage contains information about the company and some general product information, however, it does not allow for the purchasing of products and doesn't even include the actual price of products. As such, Miskin has not had sufficient contacts with the state of Illinois to give the court personal jurisdiction. For the above reasons, the Recommendation of Magistrate Judge Cudmore that Miskin's motion be denied is rejected. Instead, Miskin's motion is allowed and the Complaint is dismissed against him.

CASE TERMINATED.