**EUROMARKET DESIGNS, INC. d/b/a Crate & Barrel, Plaintiff,**

v.

**CRATE & BARREL LIMITED, Miriam Peters and Point Blank Multimedia, Defendants.**

No. 99 C 6926.

United States District Court,
N.D. Illinois,
Eastern Division.

May 16, 2000.

Bart Allen Lazar, Miles A. Zvi, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, George H. Gerstman, Daniel M. Gurfinkel, Terrence W. McMillin, Gertsman,

Ellis & McMillin, Ltd., Chicago, IL, for Euromarket Designs, Inc., plaintiff.

Susan Somers Neal, Kevin J. McDevitt, Neal & McDevitt, Evanston, IL, for Crate & Barrel Limited, Miriam Peters, Point Blank Media, defendants.

## MEMORANDUM OPINION AND ORDER

MORTON DENLOW, United States Magistrate Judge.

Cyberselling is here to stay. The Internet makes it possible for persons worldwide to buy, sell and ship goods to or from anywhere in the world from their own living room using a computer and an Internet hook-up.[1] Courts and legislatures must keep pace with the ever changing world of cyberspace. This opinion addresses the issue of whether an Irish retailer with an interactive website allowing Illinois residents to order goods from Illinois for shipment to a foreign address can be sued in Illinois by an Illinois company for violation of the Lanham Act.

Plaintiff Euromarket Designs, Inc., d/b/a Crate & Barrel ("Crate & Barrel") filed a three-count complaint alleging trademark violations under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510/2 *et seq.* arising out of the alleged use of the Crate & Barrel mark by Defendant Crate & Barrel Limited ("Limited" or "Defendant"). Defendants Limited, Miriam Peters ("Peters"), and Point Blank Multimedia ("Point Blank") bring this motion to dismiss for lack of subject matter jurisdiction or personal jurisdiction pursuant to Federal Rules of Civil Procedure 12(b)(1) and (2). In the alternative, Defendants move to stay the proceedings pending the disposition of related litigation in Ireland and the United Kingdom.

At oral argument on April 20, 2000, the claims against Miriam Peters and Point Blank Multimedia were dismissed, without prejudice, on Plaintiff's oral motion. Therefore, the issue to be decided is whether to dismiss the action for lack of subject matter or personal jurisdiction as to Limited. For the reasons set forth below, the Court denies Limited's motion to dismiss and motion to stay proceedings because the Court has both subject matter jurisdiction over the dispute and personal jurisdiction over Limited.

## I. FACTUAL BACKGROUND

### A. Crate & Barrel, Plaintiff

Plaintiff Crate & Barrel is an Illinois corporation with its principal place of business in Northbrook, Illinois. (Pl.Comp. ¶ 1). Plaintiff has used the name and mark "Crate&Barrel" exclusively for more than 35 years in connection with its business as a retailer selling housewares and furniture. (Pl.Comp.¶ 8). Plaintiff is the owner of federal trademark and service mark registrations for both "Crate&Barrel" and "CRATE AND BARREL," and also owns a large number of foreign registrations for the marks, including registrations in Ireland, the United Kingdom, and the European Community. (*Id.*). Plaintiff has characterized its name and mark as "one of the most famous, celebrated, and well-regarded." (Pl.Comp. ¶ 9).

In addition to extensive advertising and sales in the United States and abroad, Plaintiff has developed and registered an interactive website on the Internet at the domain name "www.crateandbarrel.com." (Pl.Comp.¶ 14). The website contains information about Crate & Barrel products and other business information. (Pl.Comp. ¶ 10). Website visitors worldwide may purchase products from Plaintiff using the website. (*Id.*).

### B. Crate & Barrel Limited, Defendant

Defendant Limited is a corporation organized under the law of Ireland with a principal place of business at 56/57 Upper

---

1. For a discussion regarding the Internet and how it works, see this Court's opinion in *Intermatic, Inc. v. Toeppen,* 947 F.Supp. 1227 (N.D.Ill.1996).

Georges Street, Dun Laoghaire, Co., Dublin, Ireland. (Pl.Comp.¶2). Limited's only retail store is located at this address. (D.Mot. to Dismiss, Ex. A ¶ 4). The retail store has the name **"CRATE & BARREL"** prominently displayed on its facade. (Pl.Comp.Ex.5). The store was opened in 1994. (D. Reply Memo, Ex. A, ¶ 5).

Peters, an Irish citizen residing in Dublin, Ireland, is Director and Company Secretary of Limited. (D.Mot. to Dismiss, Ex. A). According to Plaintiff, Peters visited Illinois, saw the Crate & Barrel store in Oak Brook, Illinois, and returned to Ireland to open a retail store of the same name. The Plaintiff's characterization of these events has been controverted by Peters in one of her affidavits, where she claims that "the name Crate & Barrel Limited was selected based on the suggestion of a friend in Ireland." (D. Reply Memo., Ex. A ¶ 6).

After the Crate & Barrel retail store was opened in Ireland, Limited also created and registered an Internet website at the domain name "www.crateandbarrel-ie. com." (Pl.'s Compl. ¶ 16 and Ex. 4). The website identifies itself as Crate & Barrel, and allows website visitors worldwide to both view and purchase the same household goods and furniture sold in the retail store. (Pl.Supp.Memo, Ex. A). The goods sold by Limited are similar to the types of goods offered for sale by plaintiff.

On its website, Limited's goods were priced in U.S. dollars until the commencement of this suit. (Pl.Memo., Ex. 8). After the suit was filed, Limited changed the valuation of its goods to Irish pounds and added the statement "Goods Sold Only in the Republic of Ireland" to the opening page of its website. (D.Supp.Submissions, Ex. C). Despite this statement, website users who wish to purchase goods are given the opportunity to select the United States as part of both their shipping and billing addresses. (Pl.Supp.Memo., Ex. A6). On the website pages containing the fields in which users are to enter their shipping and billing address information, the fields are clearly organized for a Unit-

ed States-format address. (*Id.*). There is an entry window for the shipping/billing city, state, and zip code—a format unique to the United States. (*Id.*). The entry window for shipping/billing state contains a pull-down menu of the United States. (*Id.*).

Limited has made and maintained connections with the United States, and Illinois, in several ways. First, Limited has purchased goods from vendors in Lisle, Chicago, and Hicksville, Illinois, and has made purchases from other vendors located in America. (Pl.Supp.Memo., Ex. D). Second, Limited, through its Director Miriam Peters, has participated in trade shows in the United States, including Chicago, Illinois, in order to promote its business. (Pl.Supp.Memo., Ex. E). Third, Limited advertises in publications, such as *British Homes and Gardens* and the *Irish Times,* that are circulated in the United States and specifically in Illinois. (Pl. Supp.Memo., Ex. C1). Finally, in a transaction instigated by personnel at Plaintiff's law firm, Limited sold goods to an Illinois resident, April Wagner, who placed an order on Limited's website for a set of beaded coasters. (Pl.Supp.Memo., Ex. A3). Ms. Wagner entered an Illinois billing address, and had the package sent to an address in Dublin, Ireland. (Pl.Supp. Memo., Ex. 6). The item's packaging clearly indicated that the sender was "Crate & Barrel." (Pl.Supp.Memo., Ex. A10).

### C. Related Litigation

Plaintiff has also filed suit against Defendants in the United Kingdom and the Republic of Ireland. (D.Mot. to Dismiss Ex. C and D). Trademark infringement is at least one of the claims in each of the suits. (*Id.*) Plaintiff characterizes the suits as "just beginning; they are nowhere near a final decision," but Defendant characterizes them differently, claiming that the "proceedings in the United Kingdom case have already closed and a trial date has

been set for October 2000." (Pl.Memo. at 13; D.Mot. to Dismiss at 8).

## II. MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

Plaintiff alleges that this Court has subject matter jurisdiction over this action under the Lanham Act, 15 U.S.C. § 1121, and under 28 U.S.C. §§ 1331, 1332, and 1338. Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of claims when the district court lacks subject matter jurisdiction. "In considering a motion to dismiss for lack of subject matter jurisdiction, the district court must accept the complaint's well-pleaded factual allegations as true and draw reasonable inferences from those allegations in the plaintiff's favor." *United Transp. Union v. Gateway W. Ry. Co.*, 78 F.3d 1208, 1210 (7th Cir.1996). In addition to the complaint, it is also proper to consider evidentiary materials addressed to the jurisdictional question at the dismissal stage. *Id.* "Once the jurisdictional allegations have been controverted [by the defendant], it is the plaintiff's burden to come forward with additional evidence to support a claim of jurisdiction." *MCI Telecomms. Corp. v. Illinois Bell Tel. Co.*, 1998 WL 156678 *2 (N.D.Ill. March 31, 1998) (citing *Seglin v. Esau*, 769 F.2d 1274, 1277 (7th Cir.1985)).

### A. THE LANHAM ACT

The Lanham Act ("Act") provides original jurisdiction to the district courts over all trademark actions. 15 U.S.C. § 1121. The Act provides a civil action against "any person who shall, without consent of the registrant, use in commerce any reproduction, counterfeit copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods ... with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a).

The Act further provides:

Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act.

15 U.S.C. § 1125(a).

■ Thus, there are two essential requirements a plaintiff must allege to survive a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction: 1) the trademark violation was in connection with any goods or services and 2) the defendant used the trademark in commerce. *Juno Online Services, L.P. v. Juno Lighting, Inc.*, 979 F.Supp. 684, 691 (N.D.Ill.1997). The determination is a fact specific inquiry. The Court addresses each in turn.

### 1. The Alleged Trademark Violation Was In Connection With Goods

■ The Court finds that Limited used the "Crate & Barrel" trademark in connection with goods. Although at one time, the trademark violation required that the defendant cause "goods or services to enter into commerce," in 1988 the Act was amended, and the "[d]efendant is no longer required actually to cause goods or services to be placed into the stream of commerce." *Juno*, 979 F.Supp. at 691.

Here, although Defendant claims that the goods are only shipped in the Republic of Ireland, the trademark is prominently

displayed on Limited's website in a font alleged to be identical to Plaintiff's mark, and the Crate & Barrel mark appeared on the label of the package ordered by Ms. Wagner. Defendant has clearly begun selling goods over its website. The website is a form of commercial advertising or promotion, *Maritz v. Cybergold, Inc.*, 947 F.Supp. 1328, 1335 (E.D.Mo.1996), thus, it can be said that the mark is used in connection with goods.

### 2. The "Use In Commerce" Requirement

▮ Limited's use of the Internet satisfies the "use in commerce" requirement of the Lanham Act. Commerce is broadly defined by the Lanham Act as "all commerce which may lawfully be regulated by Congress." 15 U.S.C. § 1127. Webster is illuminating in this area, telling us that commerce is "the buying and selling of goods." WEBSTER'S II NEW RIVERSIDE UNIVERSITY DICTIONARY 286 (1994).

"Use in commerce" is defined in 15 U.S.C. § 1127 as follows:

The term "use in commerce" means the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark. For purposes of this Chapter, a mark shall be deemed to be in use in commerce—

(1) on goods when—

(A) it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale, and

(B) the goods are sold or transported in commerce, and

(2) on services when it is used or displayed in the sale or advertising of services and the services are rendered in commerce, or the services are rendered in more than one State or in the United States and a foreign country and the person rendering the services is engaged in commerce in connection with the service.

The question, therefore, is (a) whether Limited used Plaintiff's mark in commerce by placing it on goods, their containers, the displays associated with them, or their tags or labels and (b) whether the goods were sold or transported in commerce.

The Supreme Court, in the landmark case *Steele v. Bulova Watch Co.*, 344 U.S. 280, 283, 73 S.Ct. 252, 254, 97 L.Ed. 319 (1952), has held that the "in commerce" requirement must be construed liberally because the Lanham Act "confers broad jurisdictional powers upon the courts of the United States."

In *Intermatic Inc. v. Toeppen*, 947 F.Supp. 1227, 1239 (N.D.Ill.1996) this Court held that the defendant's use of the Internet satisfied the "in commerce" requirement when the defendant registered a domain name identical to the plaintiff's trademark name and used it on the Internet with the intention of reselling it to the plaintiff or some other party, a practice commonly known as cyber-squatting. Even though the defendant had no intention of selling goods or services that were similar to the plaintiff's, the fact that he had used the Internet, and that Internet communications transmit instantaneously on a worldwide basis, this Court held that "there is little question that the 'in commerce' requirement would be met in a typical Internet message, be it trademark infringement or false advertising." *Id.* (citing 1 Gilson, Trademark Protection and Practice § 5.11[2], p. 5–234 (1996)).

In a similar case against the same defendant, the Ninth Circuit adopted this Court's reasoning and found that the defendant's actions of registering a domain name combined with the attempt to resell the domain name to the trademark holder of the same name constituted a commercial use under the Lanham Act. *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1325 (9th Cir.1998). Although the court agreed that the mere registration of a trademark as a domain name without more is not a commercial use of the trademark, the court found Toeppen's actions went far

beyond mere registration. Toeppen's "business" was to register trademarks as domain names through Network Solutions, Inc. ("NSI") for $100, and then sell them to the rightful trademark owners, preventing the trademark owners from doing business on the Internet unless they pay Toeppen's fee, which ranged between $10,000 and $15,000. *Id.* at 1319.

Similarly, maintaining an interactive website that sends out information regarding the defendant's upcoming services and solicits names for mailing lists constitutes advertisement and solicitation, thus meeting the "use in commerce" test under the Lanham Act. *Maritz, Inc. v. Cybergold, Inc.*, 947 F.Supp. at 1335. The fact that the defendant's business was not fully operational did not sway the court's opinion, holding that a Lanham Act claim can exist even before a defendant actually opens for business, as long as the acts of the defendant are imminent and impending. *Id.*

In this case, the facts are more compelling in favor of finding that Defendant's acts constitute "use in commerce." Accepting Plaintiff's factual allegations as true and drawing inferences in favor of Plaintiff, as the Court is required to do for the purposes of analyzing a motion to dismiss, Defendant has gone far beyond merely registering a trademark as a domain name on the Internet; Limited has actually entered into a sales contract with at least one Illinois customer over the Internet using the Crate & Barrel trademark. By anyone's definition of commerce, entering into a sales contract, wherever the goods may be shipped, constitutes use in commerce. Plaintiff has met its burden of supporting its allegations. Limited satisfied both sections of 15 U.S.C. § 1127 because it (a) used Plaintiff's mark in commerce by placing it on goods, their containers, the displays associated with them, and their tags or labels and (b) sold and transported the goods in commerce.

First, Limited placed Plaintiff's mark on displays associated with Limited's goods. Plaintiff's mark permeates Limited's entire website. Plaintiff's mark is being used as Limited's domain name, which was originally "www.crateandbarrelie.com" and is now "www.crateandbarrel.ie.com"[2] Plaintiff's mark is also being used as the name of the website, and appears prominently on most pages of the website, including the home page. Plaintiff alleges that the mark's font on Limited's website and retail store in Ireland is identical to that used by Plaintiff, its owner.

Second, Limited placed Plaintiff's mark on the tags or labels for Limited's goods. Limited sold goods to an Illinois resident and a member of Plaintiff's firm, April Wagner, for delivery in Ireland. In purchasing the goods on Limited's Internet site, Ms. Wagner entered an Illinois billing address and an Irish shipping address. The order was completed using Ms. Wagner's credit card, and the goods were shipped to the Irish address, constituting a "sale and transportation of goods in commerce." Plaintiff's mark "Crate & Barrel" appeared on the label of this package.

Defendant's argument that, because a package was not shipped to Illinois, it's use of Plaintiff's mark did not rise to a sufficient level to be considered "use in commerce" is without merit. Defendant entered into a sales contract with an Illinois resident. Defendant collected revenues from an Illinois resident. Sales and collection of revenue are a vital part of commerce by anyone's definition. Given the modern realities of the Internet, faxes, discount air fares, international company employee transfers, and the increasingly

2. The Court takes judicial notice that the ".com" suffix on a website is an abbreviation for and specifically designed for commerce, as opposed to ".org" for organization, ".gov" for government program or ".edu" for institutions of education, and ".net" for network organization. *Intermatic*, 947 F.Supp. at 1231. Although use of a ".com" suffix is not dispositive proof that the website is used in commerce, it is an indication that it is a commercial website. *Id.* at 1239.

mobile nature of individuals, it is entirely foreseeable that goods will be sold to one individual and shipped to another in a foreign state or country. Simply because the goods were shipped to a non-Illinois location does not make the transaction any less a sale, nor does it make Defendant's actions outside the ambit of "use in commerce."

If a foreign distributor masquerades as the true trademark holder in a similar market, selling similar goods, displaying a similar mark, and using the trademark as the domain name for the website, and induces U.S. citizens to purchase goods they would otherwise have purchased from the rightful trademark holder, it is no less a trademark infringement that the goods were purchased over the Internet and sent to a foreign location. The sale was made at the expense of the registered trademark owner; the rightful holder of the mark has lost a sale and lost revenues. This is precisely the kind of injury that the Lanham Act was designed to protect.

We are in a worldwide marketplace. "The Internet is a vast and expanding worldwide network of computers and other devices linked together by various telecommunications media." *Intermatic*, 947 F.Supp. at 1230. "In recent years, businesses have begun to use the Internet to provide information and products to consumers and other businesses" around the planet. *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1124 (W.D.Pa.1997) (citing *Panavision Int'l L.P. v. Toeppen*, 938 F.Supp. 616 (S.D.Cal. 1996) *aff'd* 141 F.3d 1316 (9th Cir.1998)). "The Internet makes it possible to conduct business throughout the world entirely from a desktop." *Zippo*, 952 F.Supp. at 1124. Our modern legal notion of subject matter jurisdiction must keep up with the fast-moving, ever-changing landscape of cyberspace and new technologies.

### III. MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Federal Rule of Civil Procedure 12(b)(2) provides for dismissal of claims when the district court lacks personal jurisdiction. When reviewing a motion to dismiss, the court takes all jurisdictional allegations in the complaint as true unless controverted by the defendant's affidavits. *Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir.1987). Any conflicts between the parties' affidavits must be resolved in favor of the plaintiff. *Id.* To survive this motion to dismiss, the plaintiff has the burden of making a prima facie case for personal jurisdiction. *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir.1997).

### A. GENERAL JURISDICTION

A defendant domiciled in a forum state or who has activities that are "substantial" or "continuous and systematic" is subject to the general jurisdiction of that state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–16, 104 S.Ct. 1868, 1873, 80 L.Ed.2d 404 (1984). Generally, the defendant's mere maintenance of an Internet website is not sufficient activity to exercise general jurisdiction over the defendant. *Panavision*, 141 F.3d at 1320; *Zippo*, 952 F.Supp. at 1122. In this case, Defendant's activities are not so substantial or continuous and systematic such that this Court has general jurisdiction.

### B. SPECIFIC JURISDICTION

In the absence of general jurisdiction, specific jurisdiction allows a court to exercise personal jurisdiction over a non-resident defendant for forum related activities in cases where the defendant has sustained minimum contacts within the framework of *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and its progeny. Defendant's actions in this case make specific personal jurisdiction over Defendant appropriate.

In federal question cases, the plaintiff's effort to make a prima facie case for specific personal jurisdiction has two elements. First, the plaintiff must show that bringing the defendant into court is consistent with the Fifth Amendment's due pro-

cess guarantees. Second, the plaintiff must show that the defendant is amenable to service of process. *LFG, L.L.C. v. Zapata Corp.*, 78 F.Supp.2d 731, 734 (N.D.Ill. 1999) (citing *United States v. De Ortiz*, 910 F.2d 376, 381–82 (7th Cir.1990)). The Court addresses these elements in inverse order.

## 1. Amenability to Service

The plaintiff must show that the defendant is amenable to service of process. *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987). The Federal Rules of Civil Procedure, in Rule 4(k), provide that service is sufficient to establish personal jurisdiction over the defendant either, first, when such service is provided for by a United States statute or, second, when the defendant could be subjected to the jurisdiction of a court in the forum state through that state's long-arm statute. Because this case involves the Lanham Act, which does not provide for service of process, defendants' amenability to service is governed by Illinois' long-arm statute, 735 Ill.Comp.Stat.Ann. 5/2–209(a). *LFG, LLC v. Zapata Corp.*, 78 F.Supp.2d at 735.

The Illinois long-arm statute provides that a defendant is subject to the jurisdiction of its courts as to any of several specified causes of action. Specifically, the long-arm statute provides that a defendant submits to the jurisdiction of the Illinois courts if it commits a tortious act within the state and "the cause of action arises from the doing of such act." *Clipp Designs, Inc. v. Tag Bags, Inc.*, 996 F.Supp. 766, 768 (N.D.Ill.1998). The statute also provides that the Illinois state courts may exercise jurisdiction on any basis permitted by the state or federal constitutions. The statute therefore authorizes the exercise of personal jurisdiction by the Illinois courts to the fullest constitutional limit. Because of this, "the statutory analysis collapses into a due process inquiry, and [the court] need not consider whether defendants engaged in any of the acts enumerated in the long-arm statute." *LFG*, 78 F.Supp.2d at 735. Consequently, both

elements of the analysis of specific personal jurisdiction require a due process analysis.

## 2. Due Process

A three part test has emerged to determine whether the exercise of specific jurisdiction over a non-resident defendant is appropriate and meets the due process requirements of the Fourteenth Amendment. *Panavision*, 141 F.3d at 1320; *Zippo*, 952 F.Supp. at 1122–3. 1) The defendant must have sufficient minimum contacts with the forum state, that is, he must do some act or consummate some transaction with the forum state, or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protection of its laws; 2) The claim asserted must be one which arises out of or results from the defendant's forum related activities; and 3) the exercise of jurisdiction must be reasonable. *Panavision*, 141 F.3d at 1320; *Zippo*, 952 F.Supp. at 1122–3. In this case, all the due process requirements are met and specific personal jurisdiction is proper.

## a) Purposeful Availment and Minimum Contacts

This requirement ensures that the defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts or of the "unilateral activity of another party or third person." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985). The pivotal question in this due process analysis is whether the "defendant *himself*" "purposefully" and "deliberately" established "minimum contacts" with the political unit covering the forum. *Id.* at 475, 105 S.Ct. at 2184; *Asahi Metal Indus. Co. v. Superior of Cal.*, 480 U.S. 102, 108–09, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). The critical issue is whether "the defendant's conduct and connection with the forum State are such that

he should reasonably anticipate being hailed into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). Defendants not physically present in the forum may still have minimum contacts if they "purposefully avail themselves" of the privilege of conducting activities there. *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). "Jurisdiction ... may not be avoided merely because the defendant did not physically enter the forum State.... [I]t is an inescapable fact of modern commercial life that a substantial amount of commercial business is transacted solely by mail and wire communication across state lines, thus obviating the need for physical presence within a State in which business is conducted." *Burger King,* 471 U.S. at 476, 105 S.Ct. at 2184.

In this case, Defendant's activities demonstrate that it deliberately established minimum contacts with Illinois and purposefully availed itself of the privilege of conducting activities in this forum under both the traditional effects doctrine and the sliding scale analysis developed for Internet activities in trademark infringement suits.

### i) Effects Doctrine

▉ Limited has established minimum contacts with Illinois under the effects doctrine. The effects doctrine, established by the Supreme Court in 1984, holds that personal jurisdiction over a defendant is proper when 1) the defendant's intentional tortious actions 2) expressly aimed at the forum state 3) causes harm to the plaintiff in the forum state, of which the defendant knows is likely to be suffered. *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). In *Calder,* a Florida publisher, who had a weekly periodical with a national distribution, published a story about a California celebrity entertainer, who then brought a libel action against the publisher. In finding that personal jurisdiction was proper, the Court focused on the plaintiff and the effects of the defendant's actions. Reasoning that

the plaintiff lived and worked in California, spent most of her career in California, suffered injury to her professional reputation in California because the entertainment industry was centered in California, and suffered emotional distress in California, the Court concluded that the plaintiff in California was the target of defendant's intentional and tortious actions, thus, personal jurisdiction in California was appropriate.

▉ The Seventh Circuit has applied the effects doctrine to a trademark infringement case, holding that personal jurisdiction is proper in the state of the plaintiff's principal place of business because the injury primarily occurs where the plaintiff lives. *Indianapolis Colts, Inc. v. Metro. Baltimore Football Club, L.P.,* 34 F.3d 410, 411 (7th Cir.1994). In *Indianapolis Colts,* the only activity of the defendant in the forum state of Indiana was the nationwide televised broadcast of the defendant's football games. The court found that, although there was no physical entry into the state, the effect of telecasting into Indiana a trademark, whose owner's principal place of business is Indiana, would result in an injury that will be felt mainly in Indiana. *Id.* Infringement of intellectual property rights is a tort. *Milwaukee Concrete Studios, Ltd. v. Fjeld Mfg. Co.,* 8 F.3d 441, 445, 447 (7th Cir.1993). "If trademarks are impaired, as the suit alleges, the injury will be felt mainly in Indiana. By choosing a name that might be found to be confusingly similar to that of the Indianapolis Colts, the defendants assumed the risk of injuring valuable property located in Indiana. Since there can be no tort without an injury, the state in which the injury occurs is the state in which the tort occurs, and someone who commits a tort in Indiana should ... be amenable to suit there." *Indianapolis Colts,* 34 F.3d at 411–412.

. The Ninth Circuit in *Panavision* used both the sliding scale approach and the effects doctrine in an Internet trademark infringement case to find personal jurisdic-

tion over an Illinois defendant who registered the California plaintiff's trademark as defendant's Internet domain name with the intention of reselling the domain name to the plaintiff. *Panavision*, 141 F.3d at 1322. The court found that the defendant's registration of the plaintiff's trademark as his domain name combined with the intent of reselling the domain name had the effect of injuring plaintiff in the state of plaintiff's principal place of business. *Id.*

Similarly, in *Bunn–O–Matic*, another trademark infringement case, the District Court for the Central District of Illinois held that personal jurisdiction was appropriate because, since the plaintiff was incorporated in and had its principal place of business in Illinois, it was "reasonable to conclude that the injury of trademark infringement will be felt mainly in Illinois." *Bunn–O–Matic Corp. v. Bunn Coffee Service Inc.*, 46 U.S.P.Q.2d 1375, 1377, 1998 WL 207860. The defendant contended that personal jurisdiction could not rest on mere injury, absent some form of entry into the forum, which was a question explicitly left open by the Seventh Circuit in *Indianapolis Colts*. In response to this contention, the District Court held that either (a) entry was not required for an exercise of personal jurisdiction under these circumstances or, (b) if there was an entry requirement, it was satisfied by defendant's conduct in constructing a website that was accessible to residents of the forum state. *Id.* at 1376–1377, 1998 WL 207860.

Finally, in *McMaster–Carr*, the District Court held that the effects test was satisfied when the defendant registered the plaintiff's mark as its domain name with the knowledge that this conduct would hurt the plaintiff in Illinois, its principal place of business. *McMaster–Carr Supply Co. v. Supply Depot, Inc.*, 1999 WL 417352, at *4 (June 16, 1999). The court said, "[j]ust as in *Panavision*, here defendant directed activity toward the forum state by its allegedly improper use on the Internet of a mark registered to a business

in that state, which action harmed the business in the forum." *Id.*

Applying the law to this case and taking all jurisdictional allegations in the complaint as true, Limited's alleged tortious actions establish personal jurisdiction over Limited under the effects doctrine for three reasons: 1) if the Crate & Barrel's trademark has been infringed, the injury will be felt mainly in Illinois; 2) Limited intentionally and purposefully directed its actions toward Illinois and Crate & Barrel, an Illinois corporation, allegedly causing harm to Crate & Barrel in Illinois; and 3) Limited knew that harm would likely be suffered in Illinois.

Limited's Internet activities were directed toward Crate & Barrel and Illinois. Limited allegedly registered an Illinois company's mark as its domain name and deliberately designed an Internet website using an Illinois company's mark with the knowledge that this conduct would likely injure Plaintiff in Illinois, its place of incorporation and principal place of business. In addition, Limited intentionally designed the website to be interactive, inducing Illinois and United States residents to order goods over the Internet with an order format specifically designed for United States "ship to" and "bill to" addresses, and providing for credit card usage for ease of billing.

Limited's non-Internet activities were also intentionally directed toward Crate & Barrel and Illinois. Limited pursued and established vendors and suppliers in Illinois, some of which are also Crate & Barrel's suppliers, and attended trade shows in Illinois designed to promote its business in Illinois and the United States, potentially causing confusion between Crate & Barrel and Limited in the eyes of Illinois vendors, suppliers, customers and businesses in Illinois.

If trademark infringement is found, the primary injury would be in Illinois, and Limited would know that the injury would likely be felt in Illinois. Crate & Barrel's principal place of business is in Illinois. It

has been a popular, premier retailer of housewares and furniture in Illinois, with a well known Chicago presence. In addition to potential confusion to Crate & Barrel's Illinois vendors, suppliers, businesses, credit and lending institutions and customers because of Limited's actions, any sales over the Internet that were made due to the confusion of customers between Crate & Barrel and Limited were made at the expense of Crate & Barrel, resulting in lost revenues to an Illinois company. Similarly, any of Crate & Barrel's business, credit or investment relationships that may have been harmed due to the confusion would have its primary effect in Illinois. Certainly, the state of a company's principal place of business is where the injury is most likely to occur. Therefore, personal jurisdiction is proper under the effects doctrine.

### ii) Sliding Scale Test for Trademark Infringing Internet Activities

The concept of personal jurisdiction by virtue of a party's Internet activities is in a state of development. A website on the Internet is accessible the world over. Simply registering a domain name for a website is not sufficient to create jurisdiction without "something else." *Panavision*, 141 F.3d at 1322 (citing *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418 (9th Cir.1997)). Thus, "something else" must be required for a court to exercise jurisdiction over a defendant for Internet based activities. *Id.* This "something else" is precisely what the courts have been grappling with. Thus, the analysis must begin with what else is needed, that is, what level of interaction with an Internet website is required to rise to the level of "minimum contacts" such that a defendant maintaining that website has purposefully availed itself of the laws of the forum state, making specific personal jurisdiction over it appropriate.

While the Seventh Circuit has not yet considered when personal jurisdiction may be exercised in the context of cyberspace, other circuits and several district courts have spoken on the issue. A few recurrent themes dominate, leading to the emergence of a three part sliding scale analysis to determine what level of website interaction subjects a defendant to personal jurisdiction in a cyberspace trademark infringement case. *Zippo*, 952 F.Supp. at 1124. "[T]he likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet. This sliding scale is consistent with well developed personal jurisdiction principles." *Id.* The *Zippo* court grouped the various cases into three separate categories, based upon the website's commercial interactivity.

### 1) Conducting Business Over the Internet

The first category consists of "situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction ... over the Internet, personal jurisdiction is proper." *Id.* These websites are clearly interactive, allowing for the transaction of business between the end user and the website's owner. For example, in *CompuServe, Inc. v. Patterson*, 89 F.3d 1257 (6th Cir.1996), the defendant, a Texas resident, entered into a contract to distribute software through CompuServe's Internet server located in Ohio. The software was uploaded via the Internet to CompuServe's Internet server located in Ohio and downloaded and used by an Ohio resident who had contracted with the defendant to use the software. The defendant accused plaintiff of trademark infringement, and the plaintiff sued in Ohio seeking declaratory relief that it was not infringing on defendant's marks. The court found personal jurisdiction, reasoning that the defendant had purposefully directed his business activities towards Ohio by entering into a contract with an Ohio resident and transmitting files via the Internet to Ohio.

#### 2) Interactive Website

The second category "is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site." *Zippo*, 952 F.Supp. at 1124. These websites are somewhat interactive, however, not to the extent of the first category. For example, in *Maritz, Inc. v. Cybergold, Inc.*, 947 F.Supp. 1328, the court found personal jurisdiction over a defendant who had established a website as a promotion for its upcoming Internet service. Although the service was not yet fully operational, users were encourage to add their addresses to a mailing list for future promotions and information. Plaintiff brought suit alleging violation of the Lanham Act and seeking to enjoin defendant from alleged trademark infringement and unfair competition. The court found that the defendant's conduct and the level of interactivity of the website was "clearly intended as a promotion ... and solicitation ... suggest[ing] that the defendant is purposefully availing itself of the privilege of conducting activities in [the forum state.]" *Id.* at 1333.

#### 3) Passive Website

The third category is "situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise of personal jurisdiction." *Zippo*, 952 F.Supp. at 1124. An opposite finding would lead to the conclusion that there should be worldwide personal jurisdiction over anyone and everyone who establishes an Internet website, which is inappropriate. *LFG, L.L.C. v. Zapata Corp.*, 78 F.Supp.2d at 736. Falling into this category is *Bensusan Restaurant Corp. v. King*, 937 F.Supp. 295 (S.D.N.Y. 1996), a trademark infringement suit in which the court refused to exercise personal jurisdiction over an out of state defendant whose passive Internet website contained general information about the defendant's club, a calendar of events and ticket information.

In the case at hand, Plaintiff has alleged sufficient minimum contacts with Illinois such that it is appropriate for this Court to exercise personal jurisdiction over Defendant. Limited's website clearly falls into the first category of interactive websites which allow a defendant to "do business" and "enter into contracts with residents of a foreign jurisdiction over the Internet." Limited purposefully and deliberately designed and now maintains a website with a high level of interactivity, enabling customers to browse through an online catalog and place orders via the Internet. The website actively solicits all users, including residents of Illinois, to purchase goods. Defendant clearly is doing business over the website.

Defendant's assertion that it is not conducting commerce in Illinois when it only ships to the Republic of Ireland is unpersuasive. Limited bills Illinois customers, collects revenues from Illinois customers, and records sales on goods ordered from Illinois.

The appropriateness of this Court's personal jurisdiction over Limited is further strengthened by Limited's non-Internet contacts with the forum. Limited, *itself*, deliberately pursued and developed business relationships in Illinois using the Crate & Barrel trademark. Limited's vendors include Illinois suppliers, some of which are also Crate & Barrel's vendors, as well as suppliers across the United States. Limited attended trade shows in Illinois and other states to promote its business. Limited advertises in publications, namely the *British Homes and Gardens* and the *Irish Times*, which are circulated across the United States, including Illinois. The use of the Crate & Barrel trademark in the course of these activities may cause injury to Plaintiff in Illinois.

Through both its Internet and non-Internet activities, Limited has deliberately developed and maintained not only minimum, but significant, contacts with this forum. Therefore, personal jurisdiction over Limited in Illinois is proper.

### b) The Lanham Act Claim Arises From Defendant's Forum–Related Activities

 The second requirement for specific, personal jurisdiction is that the claim "arise from or relate to the defendant's contacts with the forum." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). This requirement protects a defendant from being haled into court in a foreign jurisdiction due to "the unilateral activity of another party or third person," as opposed to defendant's *own* contacts that he deliberately pursued with the foreign jurisdiction. *Burger King*, 471 U.S. at 475, 105 S.Ct. at 2183. Thus, we must determine if Crate & Barrel would not have been injured "but for" the conduct of Limited directed toward Crate & Barrel in Illinois. *Panavision*, 141 F.3d at 1322.

In this case, the Crate & Barrel's injury and claim of trademark infringement arose from Limited's contacts with Illinois. In *Indianapolis Colts*, the Seventh Circuit, found personal jurisdiction was appropriate in Indiana, the principal place of business of the plaintiff, because the cause of action, trademark· infringement, arose from the defendant's contacts with Indiana, namely, the defendant's tortious injury to an Indiana plaintiff. *Indianapolis Colts*, 34 F.3d at 411.

Similarly, in *Panavision*, the Ninth Circuit summarily concluded, "But for Toeppen's conduct, this injury would not have occurred. Panavision's claims arise out of Toeppen's California-related activities." *Panavision*, 141 F.3d at 1322.

In the case at hand, this requirement is also satisfied. As previously discussed, if trademarks are impaired, Defendant's alleged registration of Plaintiff's trademark as it's own Internet domain name, use and prominent display of Plaintiff's trademark on Defendant's website, and sale of Defendant's goods labeled with Plaintiff's trademark via the website to an Illinois customer will have the direct effect of injuring Plaintiff in Illinois. But for Limited's deliberate actions and intentional conduct, this injury would not have occurred. Thus, Crate & Barrel's claims arise out of Limited's Illinois-related activities.

### c) Reasonableness of Jurisdiction

Finally, the reasonableness prong exists to protect defendants against unfairly inconvenient litigation. *World–Wide Volkswagen*, 444 U.S. at 292, 100 S.Ct. at 564. In order to satisfy due process requirements, the court's exercise of personal jurisdiction must comport with "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Once the plaintiff has established a prima facie case for the court's personal jurisdiction over the defendant, if the defendant who "purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 476, 105 S.Ct. at 2184.

 When a court is considering haling a defendant from a foreign country into a United States courtroom to defend litigation, as is the case here, this analysis takes on particular importance. In evaluating the question of reasonableness, the Supreme Court has set forth seven factors to consider: 1) the extent of a defendant's purposeful interjection; 2) the burden on the defendant in defending litigation in the forum state; 3) the extent of conflict with the sovereignty of the defendant's state; 4) the forum state's interest in adjudicating the dispute; 5) the most efficient judicial resolution of the controversy; 6) the importance of the forum to plaintiff's interest in convenient and effective relief; and 7) the existence of an alternative forum.

*Burger King,* 471 U.S. at 476–7, 105 S.Ct. at 2184. No one factor is dispositive; a court must balance all seven. *Panavision,* 141 F.3d at 1323.

### i) Limited's Purposeful Interjection is Significant

This factor weighs strongly in favor of the Court's exercise of personal jurisdiction. Here, the extent of Limited's purposeful interjection was substantial. Limited, allegedly, has purposefully and deliberately designed a website using Crate & Barrel's trademark as their Internet domain name, prominently displayed Crate & Barrel's mark on their website, solicited business through the website, and conducted business over the Internet through the website. Limited's actions via the Internet were directed toward Crate & Barrel in Illinois.

In addition, Limited deliberately and purposefully pursued, developed and maintained business contacts in Illinois by attending trade shows to promote its business in the United States, purchasing goods from Illinois vendors, and advertising in publications circulated in Illinois. Thus, Defendant has purposefully and substantially interjected itself into the forum state of Illinois by both its Internet and its non-Internet activities.

### ii) Defendant's Burden in Litigating

A defendant's burden in litigating in the forum is a factor in the assessment, however, unless the inconvenience is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction. *Panavision,* 141 F.3d at 1323.

In this case, Defendant has already made several trips to Illinois and other parts of the United States to attend trade shows, develop relationships with vendors and suppliers, and promote it's business. In this era of Internet communications (with which Defendant is well familiar), faxes, telecommunications, and discount air travel, requiring Limited to litigate in Illinois is not constitutionally unreasonable. *See id.*

### iii) Sovereignty

This factor concerns the extent to which this Court's exercise of jurisdiction would conflict with the sovereignty of the Republic of Ireland, Defendant's principal place of business. *Panavision,* 141 F.3d at 1323. Although Plaintiff and Defendant are involved in litigation in Ireland, Plaintiff has brought a separate claim in each jurisdiction, each based on the trademark laws of the particular forum. The Irish court will not decide liability under the Illinois Uniform Deceptive Trade Practices Act and the Lanham Act. The exercise of jurisdiction by a federal court in Illinois does not implicate sovereignty concerns of the Republic of Ireland.

### iv) Forum State's Interest

This factor weighs heavily in favor of exercising jurisdiction. "Illinois has a strong interest in adjudicating disputes that involve the alleged infringement of an Illinois ... company's trademark." *LFG,* 78 F.Supp.2d at 739.

### v) Efficient Resolution

This factor is not compelling in either direction. It focuses on the location of the evidence and witnesses. It is no longer weighed heavily given the modern advances in communications and transportation. *Panavision,* 141 F.3d at 1323. It would appear that the evidence to be presented by each party is equal in proportion, with the location of witnesses approximately evenly divided between Illinois and Ireland.

### vi) Convenient and Effective Relief for Plaintiff

This factor also weighs slightly in favor of exercising personal jurisdiction. It would certainly be more convenient for Crate & Barrel to litigate in Chicago than in Ireland. On the other hand, it would not be overly burdensome to Crate & Bar-

rel to litigate in Ireland, as evidenced by the fact that it is already involved in a lawsuit with Limited in Ireland for alleged violation of Irish trademark laws. However, Crate & Barrel can only obtain relief under the Lanham Act and under the Illinois Uniform Deceptive Trade Practices Act in Illinois.

#### vii) Alternative Forum

This factor is a wash. The alternative forum in which to litigate in this case is Ireland, and, as previously discussed, the parties are presently involved in litigation there to litigate Irish trademark issues. However, the Illinois forum is necessary to litigate United States and Illinois trademark issues.

Weighing all the factors, the Court finds it not unreasonable to exercise personal jurisdiction over Limited. Plaintiff has made a prima facie case for personal jurisdiction over Limited under both the due process analysis and the amenability to service test, and personal jurisdiction is reasonable. Therefore, the Court denies Limited's motion to dismiss for lack of personal jurisdiction.

### IV. SUPPLEMENTAL JURISDICTION OVER STATE LAW CLAIMS.

Supplemental jurisdiction is proper over state law claims in the following situations:

(a) [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United states Constitution.

. . . .

(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(a), (c).

The Supreme Court has held that, in order for a district court to have supplemental jurisdiction over a state law claim, "the federal claim must have substance sufficient to confer subject matter jurisdiction on the court. The state and federal claims must derive from a common nucleus of operative facts. But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is power in federal courts to hear the whole." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). In addition, "supplemental jurisdiction is not limited to restatements of the same basic ground for recovery ... The claims need only revolve around a central fact pattern." *White v. County of Newberry, S.C.*, 985 F.2d 168, 172 (4th Cir.1993).

In this case, supplemental jurisdiction over the Illinois claim is appropriate. Both the federal claim, a violation of the Lanham Act, and the state claim, a violation of the Illinois Uniform Deceptive Trade Practices Act, arise from the same nucleus of operative facts, specifically, Defendant's alleged use of Plaintiff's trademark on Defendant's Internet website, as Defendant's domain name, and on Defendant's labels of goods. Furthermore, there are no factors under 28 U.S.C. § 1367(c) that would warrant this Court to decline jurisdiction over the state claim. Finally, the Court notes several Illinois cases involving alleged trademark infringement over the Internet that have been

brought and decided under both the federal Lanham Act and related Illinois state laws. *LFG,* 78 F.Supp.2d 731; *Juno,* 979 F.Supp. 684; *Intermatic,* 947 F.Supp. 1227. This Court will exercise supplemental jurisdiction over the Illinois trademark action.

## V. MOTION TO STAY THE PROCEEDINGS

Plaintiff owns a number of foreign trademark and service mark registrations for the **"Crate & Barrel"** and **"CRATE AND BARREL"** marks, including registrations in Ireland, the United Kingdom, and the European Community. (Pl.Comp. at 3). In addition to their present suit in this court, Plaintiff has brought suit against Limited in Ireland and the United Kingdom, alleging that Limited's use of Plaintiff's mark infringes on its trademark rights. Specifically, in the case pending in Ireland, Plaintiff alleges trademark infringement, passing off, and conspiracy to damage the business interests, reputation, and goodwill of Plaintiff. (D.Mot. to Dismiss, Ex. D). In the case pending in the United Kingdom, Plaintiff alleges trademark infringement. (D.Mot. to Dismiss, Ex. C).

Because Plaintiff has brought similar actions against the Defendant in Ireland and the United Kingdom, Defendant argues that this case should be stayed to preserve judicial economy and to avoid piecemeal litigation. The Court finds these arguments unpersuasive and declines to stay the proceedings.

"Federal courts have a 'virtually unflagging obligation to exercise the jurisdiction given to them.'" *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 15, 103 S.Ct. 927, 936, 74 L.Ed.2d 765 (1983) (quoting *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)). Only under "rare" and "exceptional circumstances" providing the "clearest of justifications" should a federal court consider surrendering this jurisdiction. *Id.,* 460 U.S. at 25–6, 103 S.Ct. at 942.

The Supreme Court has provided several factors to consider when determining whether the case at hand qualifies as one of those "rare" and "exceptional circumstances" warranting a stay of proceedings in the event of concurrent jurisdiction.

In assessing the appropriateness of [a stay] in the event of an exercise of concurrent jurisdiction, a federal court may also consider such factors as the inconvenience of the federal forum; the desirability of avoiding piecemeal litigation; and the order in which jurisdiction was obtained by the concurrent forums. No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required. Only the clearest of justifications will warrant dismissal.

*Id.,* 460 U.S. at 15, 103 S.Ct. at 936–7 (citing *Colorado River,* 424 U.S. at 818–9, 96 S.Ct. at 1246–7).

In addition, when the suit involves a foreign party, a court must also consider whether "federal law provides the rule of decision on the merits;" *id.,* 460 U.S. at 23, 103 S.Ct. at 941, the "probable inadequacy" of the other forum's proceedings to protect a litigant's rights; *id.,* 460 U.S. at 26, 103 S.Ct. at 942, the United States' interest in adjudicating the dispute; and international judicial comity. *Ingersoll v. Granger,* 833 F.2d 680, 685 (7th Cir.1987). The Court addresses each factor in turn. The decision does not rest on a "mechanical checklist" but on a "careful balancing of the important factors in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses Hosp.,* 460 U.S. at 16, 103 S.Ct. at 937.

## A. INCONVENIENCE OF THE FORUM

This factor weighs in favor of jurisdiction. As previously discussed, although litigating in Illinois may not be ideal for Defendant, it is not an unreasonable burden. Defendant has already made several

trips to Illinois and other parts of the United States to attend trade shows, develop relationships with vendors and suppliers, and promote its business. With the modern conveniences of telecommunications, faxes, e-mails, and discount air travel, litigating in an Illinois forum is not unduly burdensome.

## B. AVOIDANCE OF PIECEMEAL LITIGATION

Allowing the United States suit to proceed simultaneously with the suits in Ireland and the United Kingdom does not allow or encourage piecemeal litigation. While it is obviously not ideal to have these parties arguing in three different forums, it appears unavoidable. Plaintiff alleges a justiciable claim here in the United States, and appears to do so in the foreign jurisdictions as well, based on the limited information supplied to the Court. This is not a situation involving piecemeal litigation, where various parts of the same suit are brought in different jurisdictions; instead, Plaintiff appears to have a separate claim in each jurisdiction, each resting on the trademark laws of the particular forum.

The case at hand is clearly distinguishable from *Colorado River*, in which the Supreme Court upheld the district court's dismissal due to state court proceedings of the same matter. In *Colorado River*, water rights were being adjudicated for over 1,000 water users, seeking a declaration of the water rights of certain federal entities and Indian tribes. After the filing of suit in federal court, a defendant in the federal suit sought to join the United States in a state court proceeding to comprehensively adjudicate and administer all water rights within the river system that was the subject of the federal suit. Recognizing that the field of water rights is one peculiarly appropriate for comprehensive treatment in the state court having significant experience and expertise, the Court dismissed the federal case because of the "clear federal policy of avoidance of piecemeal adjudication of water rights in a river system."

*Colorado River*, 424 U.S. at 819, 96 S.Ct. at 1247.

## C. FIRST TO FILE SUIT

This factor also weighs in favor of maintaining jurisdiction. The United States was the first forum in which the Plaintiff filed a complaint regarding this matter. The United States complaint was filed October 22, 1999, while the complaints in the United Kingdom and Ireland were filed on October 25, 1999, and November 26, 1999, respectively. (Pl.Comp. at 1; D.Mot. to Dismiss, Ex. C and D).

## D. FEDERAL LAW PROVIDES THE DECISION ON THE MERITS

Likewise, this factor weighs strongly in favor of jurisdiction. In this case, federal law provides the substantive controlling law. In the suits in Ireland and the United Kingdom, Irish and British law provide the substantive controlling law. "Courts have a duty to protect their legitimately conferred jurisdiction to the extent necessary to provide full justice to litigants." *Laker Airways Ltd. v. Sabena Belgian World Airlines*, 731 F.2d 909, 927 (D.C.Cir.1984). While Plaintiffs are free to litigate in other countries to protect legal rights conferred upon them by the governments of other countries, they also have a right to litigate in the United States to protect the legal rights conferred upon them by the Lanham Act and Illinois statute. The litigation in Ireland and the United Kingdom does not arise under United States federal law. Thus a stay of proceedings in this country would not "provide full justice to litigants."

## E. PROBABLE INADEQUACY OF FOREIGN FORUM'S PROCEEDINGS TO PROTECT LITIGANT'S RIGHTS

The Court finds that adjudication in the foreign forum would more than likely be inadequate to protect the party's rights. The Court is not to be understood to im-

peach the competence or procedures of the courts of Ireland or the United Kingdom. Quite the contrary. However, the claims of Lanham Act and Illinois Uniform Deceptive Trade Practices Act violations are not before the Irish and British courts, making them inadequate forums in which to decide these claims.

"A stay is as much a refusal to exercise federal jurisdiction as a dismissal. When a district court decides to ... stay, ... it presumably concludes that the parallel ... litigation will be an adequate vehicle for the complete and prompt resolution of issues between the parties. If there is any substantial doubt as to this, it would be a serious abuse of discretion to grant the stay." *Moses Hosp.*, 460 U.S. at 28, 103 S.Ct. at 943. Thus, a decision to stay based on exceptional circumstances "necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case." *Id.*

The Court concludes that it would be an abuse of discretion to grant a stay in this case, as parallel litigation would not be an adequate vehicle for the complete and prompt resolution of the Lanham Act and related state claims.

### F. UNITED STATE'S INTEREST IN ADJUDICATING DISPUTE

The United States has a strong interest in adjudicating this dispute. The Court finds the reasoning in *Laker* persuasive and applicable to this case. "In addition to the protection of American consumers' and creditors' interests, the United States has a substantial interest in regulating the conduct of business within the United States.... By engaging in this commercial business, [Defendants] subject themselves to the *in personam* jurisdiction of the host country's courts. They waive either expressly or implicitly other objections that might otherwise be raised. A major reason for this subjection to business regulation is to place foreign corporations generally in the same position as domestic businesses." *Laker*, 731 F.2d at 924–5. Similarly, the United States has a

strong interest in adjudicating the rights in a trademark infringement case, particularly when one of the parties is a United States corporation with its principal place of business in the United States.

### G. INTERNATIONAL COMITY

The exercise of jurisdiction by this Court over the suit would not interfere with principles of international comity. The Court begins with a brief look at the principles of comity.

"'Comity' summarizes in a brief word a complex and elusive concept—the degree of deference that a domestic forum must pay to the act of a foreign government not otherwise binding on the forum. Since comity varies according to the factual circumstances surrounding each claim for its recognition, the absolute boundaries of the duties it imposes are inherently uncertain. However, the central precept of comity teaches that, when possible, the decisions of foreign tribunals should be given effect in domestic courts, since recognition fosters international cooperation and encourages reciprocity, thereby promoting predictability and stability through satisfaction of mutual expectations. The interests of both forums are advanced—the foreign court because its laws and policies have been vindicated; the domestic country because international cooperation and ties have been strengthened. The rule of law is also encouraged, which benefits all nations."
*Laker*, 731 F.2d at 937.

There are limitations to comity. When the foreign act is inconsistent with the policies underlying comity, the obligation to give deference to judgments of a foreign tribunal expires when the strong public policies of the forum are vitiated by foreign law. *Id.*

"Comity ordinarily requires that courts of a separate sovereign not interfere with concurrent proceedings based on the same transitory claim, at least until a judgment

is reached in one action, allowing *res judicata* to be pled in defense." *Id.* at 939. However, in this case, as discussed, the proceedings in the United States and those in Ireland and the United Kingdom are not based on the same claim. The sufficiency of jurisdictional contacts with the United States, Ireland, and the United Kingdom results in concurrent jurisdiction with the three countries. However, "concurrent jurisdiction does not necessarily entail conflicting jurisdiction. The mere existence of dual grounds of ... jurisdiction does not oust either one of the regulating forums. Thus, each forum is ordinarily free to proceed to a judgment.... [P]arallel proceedings on the same *in personam* claim should ordinarily be allowed to proceed simultaneously, at least until a judgment is reached in one which can be pled as *res judicata* in the other." *Id.* at 926.

In this case, there is no conflict between proceeding in American courts litigating United States and Illinois claims, and proceeding in Irish and British courts litigating Irish and British claims. A judgement in one forum may or may not raise issues of *res judicata* because, although the same parties are involved; different laws are being applied in all three forums. In addition, should judgment be rendered in one of the foreign forums, it is highly unlikely that courts in this country would find that enforcing the judgment conflicts with the strong public policies of the United States. Should that be the case, it can be addressed when the time comes.

Examination of the factors laid out in *Moses Hospital* shows that a stay would be inappropriate. This is not one of the "rare" and "exceptional circumstances" that justifies a stay. Defendant's assertions of judicial economy and the need to avoid piecemeal litigation simply do not provide the "clearest of justifications" to warrant the stay. Thus, the motion to stay proceedings is denied.

## VI. CONCLUSION

This Court has subject matter and personal jurisdiction to decide whether Defendant has violated the Lanham Act and/or the Illinois Uniform Deceptive Practices Act by using the Crate & Barrel trademark to conduct business on the Internet. **Accordingly, Defendant's motion to dismiss for lack of subject matter and/or personal jurisdiction or to stay the proceedings is DENIED.**