UNITED STATES of America,
Defendant–Appellee,

v.

Margarita Martinez DE ORTIZ, Linda I. Cabeza, Alberto P. Cabeza, Fausto Zaffino and Ilario Fazzari, Defendants.

Appeal of Terry SULLIVAN.

LAW OFFICES OF TERRY SULLIVAN, LTD., Plaintiff–Appellant,

v.

UNITED STATES of America,
Defendant–Appellee.

Nos. 89–3030, 89–3182.

United States Court of Appeals,
Seventh Circuit.

Argued May 7, 1990.

Decided Aug. 6, 1990.

378

Eric J. Klumb, R. Jeffrey Wagner, Asst. U.S. Attys., John E. Fryatt, U.S. Atty., Milwaukee, Wis., Thomas P. Walsh, Asst. U.S. Atty., Chicago, Ill., for U.S.

Terrence M. Keegan, Milwaukee, Wis., for Alberto P. Cabeza.

John J. Morrison, Decker & Associates, Chicago, Ill., for Terry Sullivan and Law Offices of Terry Sullivan.

Before BAUER, Chief Judge, CUDAHY, Circuit Judge, and WILL, Senior District Judge.[1]

WILL, Senior District Judge.

A law firm appeals from two court orders: (1) denying the firm's motion for a declaration of its property interest in some money held to pay attorney's fees and (2) requiring the firm to turn the money over to the government. For the reasons set forth herein, we remand for further proceedings consistent with this opinion.

1. The Honorable Hubert L. Will of the United States District Court for the Northern District of Illinois, Eastern Division, is sitting by designation.

*Background.*

Linda and Alberto Cabeza hired Terry Sullivan, a Rolling Meadows, Illinois attorney, and his firm in April 1986 to represent them in an Illinois state court case on a drug charge (possession with intent to deliver). On April 21, 1986, $25,000 of the Cabezas' money was used to bail Linda Cabeza out of jail, and then on June 4, $100,000 was deposited on a $1,000,000 bail bond to obtain Alberto's release. The Cabezas signed petitions requesting that any bail refund be paid to Terry Sullivan on July 30, 1986.[2] The petitions were kept by the Sullivan firm and filed in the Illinois state court much later, in February 1988.

Between the time the petitions were signed and filed with the court, the Cabezas were arrested in October 1987 and charged on November 3, 1987 in a Milwaukee superseding indictment with federal offenses: (1) participation in a conspiracy to distribute cocaine during the period of November 1984 to October 1987 and (2) drug trafficking offenses committed on March 19, 1987 and October 2, 1987. The superseding indictment included a statement that:

upon conviction ... such convicted defendant shall forfeit to the United States (1) any property constituting or derived from any proceeds the person obtained, directly or indirectly, as the result of such violation, and (2) any of the person's property used or intended to be used, in any manner or part, to commit or facilitate the commission of such violation....

The indictment specifically listed the $125,000 posted as bail in the Illinois circuit court.

On February 5, 1988, Sullivan filed a notice with the Cook County Circuit Court of his interest in the Cabezas' bail money. A few days later, on February 8, the Cabezas signed plea agreements in Milwaukee admitting guilt for the two drug trafficking

2. The Sullivan firm states that the Cabezas had already assigned their interest in the bail money to it and that the July 30 petition acted only as an acknowledgement of their earlier assignment.

offenses charged in Counts II and III of the superseding indictment.[3] Linda and Alberto's plea agreements provided that each "forfeits to the United States any interest she [sic] may have in all property named in the forfeiture provisions of the indictment...." The Cabezas entered their guilty pleas in a hearing before Judge Curran on February 9, 1988, and on March 4, Judge Curran entered a preliminary forfeiture order at the request of the government. Sullivan did not represent the Cabezas in the Milwaukee proceedings and was not before the court.

Back in Illinois, on June 14, 1988, a judge of the Circuit Court of Cook County ordered the court clerk to turn over the bail money, which came to $112,400,[4] to Terry Sullivan. In December of the same year, the Sullivan firm filed a declaratory judgment action in the Northern District of Illinois to establish its right to the money. At the request of the government, the action was transferred to the Eastern District of Wisconsin. Although Judge Curran had entered a final forfeiture order in September 1988 granting the government title to the bond funds now in the hands of Sullivan, the government neither received them nor took any action until June 5, 1989 when it filed a petition to show cause why Sullivan should not deliver the money to the United States Marshal.

On June 9, Judge Curran entered an order to show cause. Sullivan appeared and contested jurisdiction. Judge Curran ordered Sullivan to decide whether he would move to reopen the forfeiture judgment. Sullivan did not move to reopen, but stood on his jurisdictional arguments, which the district court declined to accept. Sullivan's declaratory judgment action also came out against him, since Judge Warren dismissed the suit, finding that any separate action to determine the rights over "property subject to forfeiture" was barred

under the forfeiture statute. 21 U.S.C. § 853(k) (1988).

We review both the dismissal of Sullivan's declaratory judgment action and the order that Sullivan turn over the bail money to the government.

*Analysis.*

The government obtained the order of forfeiture of the bond money held by Sullivan pursuant to the following statutory language:

> Any person convicted of a violation of this subchapter [relating to continuing criminal enterprises] or subchapter II of this chapter [relating to drug trafficking offenses] punishable by imprisonment of more than one year shall forfeit to the United States, irrespective of any provision of State law—
>
> (1) any property constituting, or derived from any proceeds the person obtained, directly or indirectly, as the result of such violation;
>
> (2) any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation,....

21 U.S.C. § 853(a)(1) & (2) (1988).

Pursuant to the relation back portion of the statute, "[a]ll right, title, and interest in property described in subsection (a) of this section vests in the United States upon the commission of the act giving rise to forfeiture under this section." *Id.* at § 853(c). The government has a property interest, therefore, in certain assets from the time drug trafficking crimes (among others) have been committed which is not perfected until the property owner is convicted of the crime alleged and the jury returns a special verdict that the property is forfeitable under the terms of the statute, Fed.R.Crim.P. 31(e); *United States v. Kingsley*, 851 F.2d 16, 19–20 (1st Cir.1988),

---

**3.** More precisely, the Cabezas admitted to the charges in an information which charged only the two substantive offenses from the indictment. In exchange for the plea, the government agreed to dismiss the superseding indictment which included the two drug trafficking charges and the conspiracy charge.

**4.** Ten percent of the money originally filed is retained by the circuit court for "bail bond costs." Ill.Rev.Stat. ch. 38, para. 110–7(f) (West Supp.1990).

or, as in the present case, the defendant pleads guilty to the offenses, agrees to the forfeiture and the court finds a factual basis for the defendant's forfeiture plea. *See United States v. Roberts*, 749 F.2d 404, 409–10 (7th Cir.1984) (affirming a forfeiture pursuant to a plea agreement to a RICO violation), *cert. denied*, 470 U.S. 1058, 105 S.Ct. 1770, 84 L.Ed.2d 830 (1985).[5]

■ This unperfected property interest extends to assets which have been transferred to third parties, "unless the transferee establishes in a hearing pursuant to subsection (n) of this section that he is a bona fide purchaser for value of such property who at the time of purchase was reasonably without cause to believe that the property was subject to forfeiture under this section." 21 U.S.C. § 853(c). In addition to showing that a transferee is a good faith purchaser for value, a transferee may show that his or her interests were acquired prior to the commission of prohibited acts by the defendant. 21 U.S.C. § 853(n)(6)(A).

The November 1987 superseding indictment, in which the Cabezas were named, alleged prohibited acts beginning in November 1984, so the bail money was accordingly subject to forfeiture during the pendency of the indictment against the Cabezas. However, circumstances changed by the time the government negotiated the Cabezas' plea agreements. The Cabezas pleaded guilty only to drug offenses committed in March and October of 1987. Therefore, once the superseding indictment was dismissed, the bond money lost its character as forfeitable property. And, based on the record before us, it seems that the government's interest in the bail money was never perfected since the Cabezas were never convicted of the conspiracy alleged in the indictment. However, since Sullivan confined the district court's analysis to juris-

dictional questions, the substantive question was never determined.

In fact, jurisdictional questions abound in this case, beginning with the issue of our own. The government argued in its jurisdictional statement that we have no jurisdiction over the judgment ordering Sullivan to turn over the bail money, because that judgment is not a final order. It argued that the order only resolved the preliminary questions of the district court's jurisdiction over him and over the question of bail money ownership. The government subsequently changed its position in its answer to Sullivan's brief, arguing that Sullivan had waived his right to litigate the merits of his claim so that the case is now final.

■ The district court never considered whether Sullivan's argument that the bond money was not forfeitable property had any merit because Sullivan persisted in challenging the court's jurisdiction and refused to make the substantive argument in the context of a hearing under the procedures laid out in 21 U.S.C. § 853(n). The court's order that Sullivan pay over the bond money to the United States Marshall ends the forfeiture case but for execution and is, therefore, final. *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 633–34, 89 L.Ed. 911 (1945).[6]

Sullivan contends that the district court did not have jurisdiction over him or the subject matter of this case, because the bond money was not properly forfeitable under § 853(a). The argument appears to be that this property was too far removed from the scope of authority provided by § 853 to be within the court's jurisdiction. The district court correctly disagreed.

Sullivan argues that the bond money is not forfeitable since it was not the proceeds of offenses for which the Cabezas were convicted and had been assigned to Sullivan before the commission of the of-

---

**5.** In fact, the Senate Report relating to the Crime Control Act points out that the government cannot be sure that it is conveying clear title to forfeited property until a hearing on third-party claims has been held. S.Rep. No. 225, 98th Cong., 2d Sess. 209, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3392.

**6.** *See* discussion below of question whether Sullivan intended to waive the § 853(n) hearing and, therefore, whether this appeal should be dismissed until the waiver question is resolved.

fenses to which they pleaded.[7] Although this sounds like a very good argument on the merits, Sullivan insisted that it showed why the district court did not have jurisdiction, either personal or subject matter.

A district court has subject matter jurisdiction over "all offenses against the laws of the United States," 18 U.S.C. § 3231 (1988), and 21 U.S.C. § 853 gives the court jurisdiction over the question which of a defendant's assets (or former assets) will be forfeited. When the government proves that property held by a third party is forfeitable, then § 853(n)(6) sets forth the court's authority to decide who as between the government and the third party has title to such property.[8] Title 21, U.S.C. § 853(g) & (*l*) grant the district court authority to enter orders "or take any other action to protect the interest of the United States in the property ordered forfeited" "without regard to the location of any property which may be subject to forfeiture." *See also* 28 U.S.C. § 1353 (1988) ("district courts shall have original jurisdiction ... of any action ... for the ... enforcement of any ... forfeiture ...").

█ Sullivan's additional "subject matter jurisdiction" arguments are that the government did not give him notice of its interest in the bail money, did not act to secure its interest and was compelled to rely on § 853(p) to obtain other property of the Cabezas in lieu of the bail money. As with Sullivan's other arguments, the notice issue is a merits question which the district court had jurisdiction to resolve. And in this case, although there was notice by publication only in Wisconsin papers, Sullivan has not argued that the publication

notice was insufficient as in *United States v. Estevez*, 845 F.2d 1409 (7th Cir.1988), and § 853(n) does not require that the government give anyone personal notice. *See* 21 U.S.C. § 853(n)(1) ("[t]he Government *may* also, to the extent practicable, provide direct written notice ...") (emphasis added). Secondly, the government is not required to secure its interest in forfeitable property. *Id.* at § 853(f) ("[t]he Government *may* request the issuance of a warrant authorizing seizure of property subject to forfeiture ...") (emphasis added).

█ Finally, § 853(p) cannot be read to force the government to pursue other assets of a defendant who has transferred property to a third party, or § 853(c) would be meaningless. Section 853(p) only comes into play when the transfer leads to the loss or diminution in value of the forfeitable property which forces the government to turn to the defendant's other assets. In short, the district court's order that Sullivan pay the money which it had already ordered to be forfeited was easily within the court's authority under § 853(g).[9]

Sullivan also argues that the district court did not have personal jurisdiction over him. Sullivan was not a party to the *Ortiz* criminal proceedings. He appeared in answer to the district court's order to show cause why he should not turn over the funds.

█ In order to exert personal jurisdiction over Sullivan in this federal question case, the district court had to find that haling Sullivan into court in Milwaukee accords with due process principles and that Sullivan is amenable to process from the

---

7. *The Illinois courts have found that an attorney, such as Sullivan, stands in the shoes of his client, so that the attorney's claim extends only to the bail money which is not forfeited to the state in payment of the defendant's fine or costs. People of Illinois v. Dale,* 112 Ill.2d 460, 98 Ill.Dec. 39, 40, 493 N.E.2d 1060, 1061 (1986). *Nevertheless, Sullivan's claim to the money which is not forfeited to the state may still trump the federal government's interest.*

8. After the jury returns a forfeiture verdict or the defendant enters a plea, then the burden of proof shifts to the third party to prove his or her interest by a preponderance of the evidence.

*See* S.Rep. No. 225, 98th Cong., 2d Sess. 209, *reprinted in* 1984 U.S.Code Cong. & Admin. News 3182, 3392.

9. In addition to arguing that the district court was correct about jurisdiction, the government makes what appears to be a merits argument that the Cabezas' stipulation to forfeiture in their plea agreements granted it the right to the bail money. Although not relevant to this appeal, which is confined to jurisdictional questions, such an argument cannot be correct, since the Cabezas could not give up property if they no longer owned it.

court. *Omni Capital Int'l v. Rudolf Wolff & Co., Ltd.,* 484 U.S. 97, 104, 108 S.Ct. 404, 409, 98 L.Ed.2d 415 (1987). We ask whether a defendant has "minimum contacts" so that the district court's exercise of jurisdiction does not violate " 'traditional notions of fair play and substantial justice.' " *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 342–43, 85 L.Ed. 278 (1940)). To determine whether a defendant is amenable to service in a federal question case, we look to the applicable federal statute. *Omni,* 484 U.S. at 105, 108 S.Ct. at 410. We have, in other federal question cases, determined that due process requires only that each party have sufficient contacts with the United States as a whole rather than any particular state or other geographic area.[10] *Lisak v. Mercantile Bancorp, Inc.,* 834 F.2d 668, 671–72 (7th Cir.1987), *cert. denied,* 485 U.S. 1007, 108 S.Ct. 1472, 99 L.Ed.2d 700 (1988); *Fitzsimmons v. Barton,* 589 F.2d 330, 332–35 (7th Cir.1979). Sullivan's contacts with the United States are unquestionably sufficient to support the district court's exercise of jurisdiction over him.

■ Congress has made Sullivan amenable to service of process in Milwaukee through Federal Rule of Civil Procedure 4(f) combined with 21 U.S.C. § 853(j). Rule 4(f) provides for service "anywhere within the territorial limits of the state in which the district court is held, and, when authorized by a statute of the United States or by these rules, beyond the territorial limits of that state." Section 853(j) adopts the civil narcotics forfeiture provisions, 21 U.S.C. § 881(d) (1988), which in turn adopt

the seizure provisions for customs violations. However, the customs laws only provide for judicial forfeiture proceedings "in the manner prescribed by law." 19 U.S.C. § 1608 (1988). Therefore, the Federal Civil Procedure Supplemental Rules apply here. *United States v. $38,000 in U.S. Currency,* 816 F.2d 1538, 1545 n. 13 (11th Cir.1987); *United States v. $2,857 in U.S. Currency,* 754 F.2d 208, 210–11 n. 2 (7th Cir.1985).

Supplemental Rule C(5) authorizes a court to "order any person having possession or control of such property to show cause why it should not be delivered into the custody of the Marshall or paid into court to abide the judgment...."[11] In addition, § 853(*l*) emphasizes the court's "jurisdiction to enter orders ... without regard to the location of any property ... which has been ordered forfeited under this section." Sullivan argues that this section gives the court jurisdiction over property not persons, but we cannot agree. It underscores the court's jurisdiction to enforce a forfeiture regardless of the location of the property and therefore, by implication, over persons who possess the property but reside outside the state or district in which the court is found.

Secondly, Sullivan asserts that the civil forfeiture procedures are *in rem,* so that in a criminal forfeiture (which is *in personam*) a court cannot obtain jurisdiction through those procedures. We see no reason why Congress is not free to adopt procedures from an *in rem* action into an *in personam* one. Sullivan's personal jurisdiction arguments fail.

---

**10.** The Supreme Court has not taken the opportunity of late to consider whether this form of due process analysis is correct, *see Omni,* 484 U.S. at 102–03 n. 5, 108 S.Ct. at 408–09 n. 5, although the Court has held in the past that a federal court which has subject matter jurisdiction over a suit may exercise its authority throughout "the limits of the territory over which the Federal government exercises dominion." *United States v. Union Pacific R.R.,* 98 U.S. (8 Otto) 569, 603–04, 25 L.Ed. 143 (1879).

**11.** The government cites two other authorities to support its argument that the district court

had jurisdiction over Sullivan. It relies on *United States v. Long,* 654 F.2d 911 (3rd Cir.1981), in which the court did not consider the district court's constitutional authority to exercise jurisdiction over the third-party holders of Long's former assets nor the court's authority over residents of different states from that of the district court. Secondly, the government argues that the All Writs Act, 28 U.S.C. § 1651, gives a court jurisdiction over non-parties. Because we find that § 853 gives the district court jurisdiction over Sullivan, we will give no additional consideration to these arguments.

Having eschewed the § 853(n) hearing, Sullivan decided that the most appropriate way to resolve his property interests in the bail money was through a declaratory judgment action and argues to us that Judge Warren erred in dismissing his case.

The wording of 21 U.S.C. § 853(k) is:

Except as provided in subsection (n) of this section, no party claiming an interest in property *subject to forfeiture* under this section may ...

(2) commence an action at law or equity against the United States concerning the validity of his alleged interest in the property subsequent to the filing of an indictment or information alleging that the property is *subject to forfeiture* under this section.

(emphasis added). In reliance on this section and on the previous decision of Judge Curran, Judge Warren dismissed Sullivan's declaratory judgment action.

Sullivan argues that the cash bond was not "subject to forfeiture," so § 853(k) is not a proper basis for dismissing his suit. Sullivan defines "subject to forfeiture" much too narrowly. The money had been named in the indictment and ordered forfeited by Judge Curran. It appears from Sullivan's allegations that the district court was probably wrong to conclude that the money in question was properly subject to forfeiture. However, once the district judge had ordered the money forfeited based on the Cabezas' forfeiture pleas and his review of the facts in support of them, the money remained subject to forfeiture unless and until that order was vacated and a § 853(n) hearing was held.

We are left with one problem: what to do about Sullivan's apparently meritorious arguments which he erroneously called jurisdictional and refused to make in the context of a § 853(n) hearing. The district court gave Sullivan more than ample opportunity to have his arguments heard. We cannot say that the court erred by failing

to persuade Sullivan's counsel correctly to litigate his case. Judge Curran suggested that Sullivan's arguments were properly made in a § 853(n) hearing and offered to entertain a motion to vacate his forfeiture order. Tr. of 7/28/89 Hearing at 31; Order of 7/28/89 ("Terry Sullivan shall notify the court on or before August 11, 1989, as to whether or not he intends to move the court for an order reopening the forfeiture judgment ...").[12] The government even stated that it would not oppose such a motion. Tr. at 28. It is not as though Sullivan would have waived his jurisdictional arguments by proceeding to argue the merits, *Toledo Ry. & Light Co. v. Hill,* 244 U.S. 49, 37 S.Ct. 591, 61 L.Ed. 982 (1917); 3A J. Moore, J. Lucas & G. Grotheer, *Moore's Federal Practice* ¶ 12.12 (2d ed. 1989) (and cases cited); 5 Wright & Miller, *Federal Practice and Procedure* § 1351, at 568 (1969), although it appears from the record that Sullivan's attorney may have been acting on that misconception. Tr. at 38 ("As I see it our choice is to either stand on our rights right now or to file a Section 853(n) petition").

We also cannot say that Judge Curran should have decided the question of ownership of the bail money upon the record already before him, since the government proposed presenting several witnesses to support its claim to the money, *id.* at 29, and the court had not yet determined whether the exhibits already presented by Sullivan and the government were admissible. *Id.* at 32. Although it is not clear what the government's case would have been since Sullivan's interest pursuant to § 853(n)(6)(A) is not dependent on his lack of "cause to believe that the property was subject to forfeiture" as under § 853(n)(6)(B), the government was at least entitled to be heard in support of its interest in the bond money.

█ However, in spite of the missteps of Sullivan's attorney, we conclude that the

12. *See also* Tr. at 15 ("That goes ahead of the jurisdictional question. I mean we aren't at that point yet. Isn't that part of your argument in support of the ownership interest in the money?"), 18 ("But the fact that [the government] didn't do any of those [acts to assert an interest

in forfeitable property] really has nothing to do with the jurisdictional issue, does it?"), 31 ("the better procedure [than a declaratory judgment action] would be to move to reopen the forfeiture procedure ...").

proper result is to remand this case for reconsideration of the merits of the forfeiture order and the plea agreement on which it rests. Federal Rule of Criminal Procedure 11(f) requires that the district court inquire into the factual basis for the plea, including the agreement to forfeit assets. *United States v. Roberts*, 749 F.2d 404, 409–10 (7th Cir.1984), *cert. denied*, 470 U.S. 1058, 105 S.Ct. 1770, 84 L.Ed.2d 830 (1985). "The mere fact that the defendant has agreed that an item is forfeitable in a plea agreement does not make it so...." *Id.* at 409.[13] The district court has a special responsibility to inquire whether assets are forfeitable, since a defendant will have no incentive to avoid agreeing to the forfeiture of assets which he or she has already transferred to a third party. Here, an investigation of the Cabezas' right to the bond money (which they had assigned to Sullivan in 1986) and of the date the assignment took place (around eight months before the first crime to which the Cabezas pleaded was committed) would have strongly indicated that the bail money was not forfeitable. At least by the time Sullivan made his "jurisdictional" argument, the district court should have sua sponte reconsidered its previous forfeiture order in light of the evidence before it.

Sullivan wanted a hearing on his argument that the bail funds were not subject to forfeiture, and he received a hearing only with regard to whether the court had jurisdiction over that question and over him. Even if he had abandoned his merits arguments by his refusal to participate in a § 853(n) hearing, we think the district court should have sua sponte reviewed its forfeiture order. However, if he did not waive, then the district court order was not final and this appeal should have been dismissed. Remand or dismissal lead, nevertheless, to the same result: the district court's reconsideration of its forfeiture order in light of the arguments made by Sullivan. The government should, of course, be heard as well in support of its argument that the money was correctly judged forfeitable.

*Conclusion.*

For the reasons stated, we remand for consideration whether the Cabezas, as part of their plea agreement, could agree that the money they had apparently assigned to Sullivan in 1986 was forfeitable pursuant to 21 U.S.C. § 853.

---

**13.** The Advisory Committee commented on the 1966 amendment of Rule 11 that the factual basis "inquiry should, e.g., protect a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge." That purpose applies with equal importance in the case of agreements to forfeit, since a defendant may not understand whether his conduct in acquiring and transferring property makes it forfeitable under § 853.