**MORRIS MATERIAL HANDLING, INC., Mhe Technologies, Inc., Harnischfeger Technologies, Inc., and Sph Crane & Hoist, Inc., Delaware Corporations, Plaintiffs,**

v.

**KCI KONECRANES PLC, a Finnish Corporation and Konecranes, Inc., a Texas Corporation, Defendants.**

No. 03–C–975.

United States District Court, E.D. Wisconsin.

Sept. 9, 2004.

Martin L. Ditkof, Law Office of Martin
Ditkof, Brookfield, Matthew S. MacLean

and Jonathan H. Margolies, Michael Best & Friedrich LLP, Milwaukee, WI, for Plaintiffs.

Paul Bargren, Robert L. Binder & Michael J. Koehler, Foley & Lardner LLP, Milwaukee, WI, for Defendants.

## DECISION AND ORDER

RANDA, Chief Judge.

Morris Material Handling, Inc. and its co-plaintiffs (collectively "Morris") have sued KCI Konecranes Plc ("KCI") and Konecranes, Inc. ("Konecranes") for federal trademark infringement and unfair competition, as well as several state and common law causes of action. Morris and its co-plaintiffs are all Delaware corporations with their principal places of business in either Wisconsin or Delaware. KCI is a Finnish corporation with its principal place of business in Hyvinkää, Finland. Konecranes, a Texas corporation with its principal place of business in Ohio, is a wholly owned subsidiary of KCI. Morris brings this action on the basis of both diversity jurisdiction pursuant to 28 U.S.C. § 1332, and federal question jurisdiction pursuant to 28 U.S.C. § 1331. KCI moves the Court to dismiss the action against it for lack of personal jurisdiction. Fed.R.Civ.P. 12(b)(2). For the reasons set forth below, KCI's motion is denied.

## I. BACKGROUND

Morris is a holding company engaged, through one of its subsidiaries, in the manufacture, distribution, and sale of industrial crane and hoist products. (Compl. at ¶¶ 3–4.) Morris and its co-plaintiffs control a number of trademarks germane to this litigation, but for purposes of this motion, it will suffice to discuss in detail only the most widely recognized of those trademarks-"P & H." The P & H trademark is owned by Harnischfeger Technologies. (Id. at ¶ 10.) In 1998 Harnischfeger sold control of its P & H Crane Division, and with it an exclusive license to use the P & H trademark, to Morris. (Id. at ¶¶ 9–10.) In the industrial crane business, the P & H trademark is one of the most recognizable in the industry. (Id. at ¶ 11.) The vast majority of P & H cranes is here in the Americas. (Solis Decl. at ¶ 6.)

KCI is a Finnish company, the parent of a large group of corporations with a worldwide presence. (MacLean Decl. Ex. 9.) It, too, through its subsidiaries, is involved in the manufacture, distribution, and sale of industrial crane and hoist products. (Compl. at ¶ 14.) In fact, KCI, through its family of companies, is one of the largest manufacturers of overhead cranes and hoists in the world with more than 4400 employees in 34 countries worldwide. (Id.; MacLean Decl. Ex. 8.) Despite its worldwide presence, KCI is careful about its presence in the United States. KCI's stock is traded on the Helsinki Stock Exchange, not on any exchange in the United States. (Def.'s Mem. Supp. Mot. to Dismiss at 2.) KCI has no bank accounts in the United States, is not registered to do business in the United States, and has no registered agent in the United States. (Id.) Moreover, KCI itself does not have any real estate, offices, or manufacturing facilities in the United States. (Id.) KCI has no customer or supplier relationships in the United States either. (Id.) But Konecranes, a KCI subsidiary and also party to this lawsuit, does have U.S. holdings and relationships.

Morris alleges that KCI and its subsidiaries misappropriated the P & H and other trademarks in at least two ways. First, Morris complains that KCI and Konecranes built their own parts and passed them off as genuine P & H parts, selling them to unwary customers. (Compl. at ¶ 16–17.) KCI, however, does not manufacture parts, nor does it sell them. That is the exclusive province of KCI's subsid-

iaries. Second, Morris complains that for at least four years KCI and Konecranes improperly used the P & H and other trademarks as metatags on their web sites. (*Id.*)

Metatags are part of the code that make up a web page. Unseen by the ordinary web surfer, metatags describe the content of a web site. Metatags come in different varieties, but the ones complained of here are "description" and "keyword" metatags. Description metatags, not surprisingly, describe a web site. Keyword metatags contain the key words related to the content of the site. When a search engine searches the internet, it looks for keyword metatags matching the search terms the user has entered. The more often a key word appears in metatags, the more likely that page is to be "hit" in a search, and the higher it will appear on the list of web sites returned by the search engine. *See Brookfield Comm., Inc. v. West Coast Ent. Corp.*, 174 F.3d 1036, 1045 (9th Cir.1999). Thus, Morris claims that by improperly using Morris's trademarks in their metatags, KCI's subsidiaries divert customers searching the internet for P & H parts (and other names trademarked by Morris) from Morris sites to KCI sites.

KCI does not prepare the content of its subsidiaries' web sites and professes not to be responsible for anything on them. But KCI owns the copyrights to the subsidiaries' web sites in question, and it claims ownership of the entire contents of those

sites. (Reply Br. at 13; MacLean Decl. Exs. 3–4.)

## II. PERSONAL JURISDICTION

■ The plaintiff has the burden of establishing personal jurisdiction. *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir.1997). If the defendant submits affidavits or other evidence opposing the exercise of jurisdiction, "the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Purdue Research Found. v. Sanofi–Synthelabo, S.A.*, 338 F.3d 773, 783 (7th Cir.2003). While the court must accept as true any uncontested jurisdictional facts presented by KCI, the plaintiff is entitled to have any conflicts in the affidavits resolved in its favor. *Id.* at 783.

■ Morris brings this action on both diversity and federal question grounds. A federal court exercising diversity jurisdiction has personal jurisdiction over a non resident only if a court in the state in which it sits would have jurisdiction. *Id.* at 779. KCI argues, and this Court agrees, that a Wisconsin court could not properly exercise jurisdiction over it.[1]

■ In a federal question case this Court has jurisdiction under two conditions: (1) haling KCI into court meets with due process concerns and (2) KCI is amenable to process from the Court. *United States v. De Ortiz*, 910 F.2d 376, 381–82

---

1. Morris argues that KCI has the necessary contacts to satisfy Wisconsin's long-arm statute. Wis. Stat. § 801.05 (2001–02). The Court is satisfied that KCI does not have sufficient contacts to satisfy Wisconsin's long-arm statute in light of due process concerns. Morris does not establish that KCI is involved in "substantial and not isolated activities in this state" for purposes of general jurisdiction. *See* Wis. Stat. § 801.05(1)(d). Aside from purchasing a Wisconsin business in 1996, and trying to purchase another since then, KCI has no employees in Wisconsin, no Wisconsin real estate, no Wisconsin bank accounts, no registered agents in Wisconsin, no customers and no sales people in Wisconsin. With respect to specific jurisdiction, Morris fails to show any distinction between the U.S. crane market and the Wisconsin crane market such that KCI has "purposefully availed" itself of Wisconsin customers in particular. Nor does Morris establish that the contacts KCI has had with Wisconsin are related in any way to this litigation.

(7th Cir.1990). Whether haling KCI into court meets with due process concerns depends on whether the defendant has minimum contacts with the forum such that the "traditional notions of fair play and substantial justice" are not offended. *De Ortiz*, 910 F.2d at 382 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). With respect to the second condition, KCI is amenable to service of process if it would be subject to the jurisdiction of a Wisconsin court. Fed. R.Civ.P. 4(k)(1)(A)(D). The Court has already noted that KCI is not subject to the jurisdiction of a Wisconsin court.[2] In the absence of Wisconsin jurisdiction, Federal Rule of Civil Procedure 4(k)(2) provides that a defendant is still amenable to process in a federal question action brought before a federal court if the defendant has sufficient minimum contacts with the United States.[3] *See ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 552 (7th Cir.2001). Thus, this Court must determine whether KCI has sufficient contacts with the United States such that traditional notions of fair play and substantial justice are met. It does.

## DUE PROCESS

Due process limits when a forum may assert personal jurisdiction over nonresidents by requiring defendants to have certain purposefully established, minimum contacts with the forum. *Cent. States v. Reimer Express World Corp.*, 230 F.3d 934, 942–43 (7th Cir.2000). The minimum contacts requirement varies depending on whether a state asserts "general" or "specific" jurisdiction. *RAR, Inc.*, 107 F.3d at 1277. "[T]he constitutional requirement for general jurisdiction is 'considerably more stringent' than that required for specific jurisdiction." *Purdue Research*, 338 F.3d at 787 (quoting *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 618 (1st Cir.2001)). In the case of a corporate defendant, general jurisdiction requires continuous and systematic general business contacts with the forum. *Id.* at 787 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)). Contacts establishing general jurisdiction must be significant enough "that it would be fundamentally fair to require [a defendant] to answer in [the forum] in *any* litigation arising out of *any* transaction or occurrence taking place *anywhere* in the world." *Id.* at 787 n. 16. In this instance, KCI does not have contacts with the United States rising to such a level that it could be brought before a U.S. court in any litigation arising out of any transaction taking place anywhere in the world.

Specific jurisdiction, on the other hand, allows a court to exercise personal jurisdiction when the cause of action *arises out of* the defendant's minimal contacts with the forum. *Purdue Research*, 338 F.3d at 787. The crucial inquiry is "whether the defendant's conduct and connection with the forum are such that it should reasonably anticipate being [haled] into court" because it purposefully availed itself of the privilege of conducting activities in the fo-

---

**2.** KCI would also be amenable to service if the applicable U.S. statute-here the Lanham Act, 15 U.S.C. §§ 1114 & 1125-authorized service. *See* Fed.R.Civ.P. 4(k)(1)(D). The Lanham Act does not authorize such service.

**3.** Federal Rule of Civil Procedure 4(k)(2) provides:

If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service is also effective, with respect to claims arising under federal law, to establish personal jurisdiction over the person of any defendant who is not subject to the jurisdiction of the courts of general jurisdiction of any state.

Fed.R.Civ.P. 4(k)(2).

rum. *Cent. States*, 230 F.3d at 943. If the defendant has not purposefully established minimum contacts, the suit is said to offend "traditional notions of fair play and substantial justice." *RAR, Inc.*, 107 F.3d at 1277 (quoting *Int'l Shoe*, 326 U.S. at 316, 66 S.Ct. 154). The "purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (internal quotations omitted). The contacts with the forum must make personal jurisdiction reasonable and fair under the circumstances. *Id.* at 476–77, 105 S.Ct. 2174. However, "the Due Process clause may not be wielded as a territorial shield to avoid . . . obligations that have been voluntarily assumed." *Burger King*, 471 U.S. at 474, 105 S.Ct. 2174. If the Court determines that KCI has sufficient minimal contacts with the forum, those contacts may then be considered in light of other factors to ensure that the traditional notions of fair play and substantial justice are completely satisfied.

### 1. Contacts

This Court has specific jurisdiction if KCI has purposefully availed itself of this forum by establishing minimum contacts with the United States, as long as the injury complained of arises from those contacts. If minimum contacts are shown, the burden shifts to KCI to give compelling reasons why jurisdiction is otherwise unreasonable. *Burger King*, 471 U.S. at 476–77, 105 S.Ct. 2174.

■ The Court will first address Morris's argument, upon which it relies quite heavily, that Konecranes' actions should be attributed to KCI for purposes of determining jurisdiction. The Supreme Court has emphasized that each particular defendant's contacts with forum should be as-

sessed individually. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n. 13, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984); *Purdue Research*, 338 F.3d at 784 (referring to *Calder v. Jones*, 465 U.S. 783, 790, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) and *Burger King*, 471 U.S. at 474, 105 S.Ct. 2174). Accordingly, the Seventh Circuit has unequivocally held that "constitutional due process requires that personal jurisdiction cannot be premised on corporate affiliation or stock ownership alone where corporate formalities are observed and the parent does not exercise an unusually high degree of control over the subsidiary." *Cent. States*, 230 F.3d at 943. Indeed, "[p]arents of wholly owned subsidiaries necessarily control, direct, and supervise the subsidiaries to some extent, but unless there is a basis for piercing the corporate veil and thus attributing the subsidiaries' [actions] to the parent, the parent is not liable for those [actions]" and cannot properly be haled into court. *IDS Life Ins. Co. v. SunAmerica Life Ins. Co.*, 136 F.3d 537, 540 (7th Cir.1998).

■ Morris bears the burden of showing that KCI exercises an unusually high degree of control over Konecranes, thus giving the Court reason to ascribe the actions of Konecranes to KCI. Morris styles KCI's involvement with its subsidiaries as "direct[ ] and intimate[ ]." (Resp. to Mot. to Dismiss at 16.) It contends that KCI has directed that employees of its subsidiaries retain litigation-related documents, that KCI copyrights the contents of its subsidiaries' web sites, and, on occasion, assists its subsidiaries in transactions in the United States. (*Id.* at 15–16.) Morris also maintains, that KCI controls the development of software programs for use by its subsidiaries and controls its subsidiaries computers. (*Id.*) Ultimately and in connection, Morris offers only four unpersuasive facts: (1) KCI once sent a memo

to all of its subsidiaries' employees directing that they retain all documents related to a particular litigation; (2) KCI's information technology director once investigated three computers, owned by a KCI subsidiary in the United States, in response to a preliminary injunction requesting that information on those computers be saved; (3) KCI owns all of Konecranes stock; (4) two of KCI officers serve on Konecranes' board of directors.

KCI, on the other hand, provides the Court with unrefuted evidence that Konecranes is a viable, independent business that is adequately capitalized and that it reinvests its own profits in itself. (Shumaker Decl. at ¶ 4.) KCI and Konecranes go to great lengths to observe corporate formalities. (*Id.* at ¶ 7.) Konecranes files separate tax returns, has the power to enter into contracts or make other business decisions without KCI's approval, and conducts business with other KCI affiliates at arms length. (*Id.* at ¶¶ 5–6.) There is no common membership between the Konecranes and KCI boards, (Salonen Decl. at ¶ 20), and Konecranes board acts independently from KCI (Shumaker Decl. at ¶ 6). None of the officers of KCI are officers of Konecranes. (Salonen Decl. at ¶ 20.) With specific reference to this litigation, KCI has shown that it does not manufacture or sell the P & H replacement parts at issue (or any other parts, for that matter), nor does it prepare any of the advertising or promotional materials regarding those parts. (Salonen Decl. at ¶¶ 6, 12; Solis Dec. at ¶¶ 4–5.) Morris does not contest any of these assertions and its continued belief that KCI directs Konecranes actions is not enough. Accordingly, the Court declines the invitation to attribute Konecranes' actions to KCI.

This leaves the Court to consider only the injury, if any, arising out of contacts KCI has with the United States through the metatags on the web sites of KCI's subsidiaries. KCI admits that it owns the copyrights on the web pages and that it owns the entire contents of the web pages. (*See, e.g.,* MacLean Decl. Ex. 4.) Notably, KCI does not deny that the allegedly infringing metatags appear in the contents of the web pages it proclaims to own, nor does it deny that the metatags have been on the web pages for at least four years. (Resp. to Mot. to Dismiss at 8.) The threshold question is whether a web site may provide sufficient contacts for this court to assert personal jurisdiction. In this case, the Court holds that it does.

Whether a web site creates sufficient contacts to confer personal jurisdiction is an issue that has created difficulty for courts. The issue has not yet been addressed in the Seventh Circuit. Recently, this Court noted that the approach set forth in *Zippo Manufacturing Co. v. Zippo Dot Com Inc.,* 952 F.Supp. 1119 (W.D.Pa. 1997), is the most comprehensive to date. The *Zippo* court used a sliding scale to determine whether contact created by a web site is sufficient. *Id.* at 1124. At one end of the scale are "active" web sites through which a defendant actively conducts business. *Id.* By way of example, these may include web sites over which parties enter into contracts, or web sites that encourage users to create online "accounts," or that have "shopping carts" or "checkouts." Personal jurisdiction is proper over defendants who operate active web sites. *Id.* At the other end of the scale are "passive" web sites, where defendants simply post information and nothing more. *Id.* When there is no opportunity for interactivity between the web site owner and the visitor, personal jurisdiction may not be asserted on the basis of the web-site contacts. *See id.* Between the two extremes are web sites that create some opportunity for interaction, where users can exchange information with site owners.

*Id.* Courts may also exercise jurisdiction over defendants in this "interactive" category. The crucial question is whether, through that web page, the defendant purposefully availed itself of the forum. *See, e.g., Cybersell, Inc. v. Cybersell, Inc.,* 130 F.3d 414, 418 (9th Cir.1997) (noting web advertisement alone not enough without something to indicate defendant purposefully directed its activity to the forum); *SF Hotel Co., L.P. v. Energy Invs., Inc.,* 985 F.Supp. 1032, 1035 (D.Kan.1997) (placing passive web site on internet without more is not act purposefully directed at forum).

The web sites in the case at bar fall somewhere in the middle of the scale. Undoubtedly the web sites provide information, but on the other hand one may not order parts or create an account profile on the web site. (*See* MacLean Decl. Exs. 2–4.) One of the web sites, lloydskonecranes.co.uk, produces an 800 number that potential customers may call. It also provides a link that potential customers may click on to "Request Info or Quote." (MacLean Decl. Ex. 2.) Finally, it gives visitors the chance to email the company. (*Id.*) Likewise, kciamericas.com provides a 24–hour toll-free national parts hotline and provides a link to craneproparts.com. (*Id.*) Crane Pro Parts is a part of the KCI family of companies and is exclusively responsible for selling P & H replacement parts. (Solis Decl. at ¶ 2.). The KCI Americas page also has a products and parts index, apparently so that a customer will know exactly what to order when he calls the 24–hour toll-free parts hotline. Though perhaps not rising to the level of online accounts and shopping carts, these web sites offer a level of interactivity. While that alone places the web sites at a point on the scale where the Court could exercise jurisdiction, further inquiry into purposeful availment is necessary.

KCI steadfastly maintains that, although it owns the copyright, it is not responsible for creating the content of the web site. Yet it nevertheless declares ownership of the allegedly infringing web sites. The legal notice on the Konecranes web page professes that "[t]he contents of these pages are owned in full by KCI." (MacLean Decl. Ex. 4.) Regardless of who prepares the content of the pages, it is counterintuitive to suggest that the web site's copyright holder and the owner of all its contents is not responsible for what is on the web page.

More importantly, KCI practically concedes purposeful availment, admitting that its subsidiaries' web sites are directed at U.S. customers. "A large majority of the existing population of P & H cranes is in the Americas[;] . . . . there is very little market for P & H replacement parts outside the Western Hemisphere." (Solis Decl. at ¶ 6.) If there was any question about whether the KCI subsidiary web sites are interactive enough for this Court to exercise jurisdiction on that basis alone, KCI's concession that the United States comprises the lion's share of the market interested in these web sites convinces the Court that KCI has purposefully established minimum contacts in the United States.

In addition, the contacts KCI has established give rise to this litigation. Morris alleges, at least in part, that its trademarks are being used illegally on the web sites owned and copyrighted by KCI. To the extent that the web pages appeared in the United States in an effort to promote business and allegedly infringed on United States trademarks, the relationship of the contacts (web sites directed at American businesses) to the injury (infringement on United States trademarks) is undeniable. That the pages were directed at American businesses for at least four years and are alleged to have infringed on United States trademarks during that period, exceeds

the necessary minimum contact. Accordingly, these web sites, owned by KCI and directed at U.S. customers, are sufficient to provide a basis for jurisdiction.

## 2. Traditional Notions of Fair Play And Substantial Justice

■ . Having determined that KCI purposefully established minimum contacts with the United States, and that this cause of action arises directly out of those contacts, the Court now turns its attention to other factors bearing on the notions of fair play and substantial justice. *See Burger King,* 471 U.S. at 476–77, 105 S.Ct. 2174. The burden shifts to KCI to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* at 477, 105 S.Ct. 2174. Even if the minimum contacts had been less than otherwise required and the burden had not shifted to KCI, there are other factors that may persuade the Court to exercise jurisdiction. A court may still examine the burden on the defendant, the forum's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, and the interests of other nations in the efficient judicial resolution of the matter to determine whether jurisdiction is reasonable despite the low level of contact. *Asahi Metal Indus. v. Superior Ct.,* 480 U.S. 102, 113–116, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987); *Burger King,* 471 U.S. at 477, 105 S.Ct. 2174.

For its part KCI argues only that litigating in the United States is a significant burden on a foreign defendant, who must travel a great distance to defend itself in an unfamiliar judicial system. KCI's burden of defending itself in the United States is not slight. Between its own activities in the Unites States and its dealings with its wholly-owned U.S. subsidiary, however, KCI cannot protest that its burden is unbearable. Even when the burden is serious, *Asahi* counsels that the interests of the forum and the plaintiff will usually outweigh that burden. *Id.* at 114, 107 S.Ct. 1026.

In this case the interests of both Morris and the United States are significant and outweigh KCI's burden. Morris alleges, among other things, trademark infringement on its U.S. trademarks. Without a U.S. forum, Morris has no place to enforce its rights. Likewise, the United States has a pronounced interest in ensuring that its trademark laws are not abrogated here in the United States. The United States also has an interest in protecting those who seek the special protections U.S. trademark law provides. Morris has availed itself of those protections(as has KCI by registering its trademarks here). In addition, both Morris and Konecranes are U.S. corporations for whom it will be most convenient to litigate in the United States. Whatever burdens are imposed on KCI are overcome by the compelling interests of the United States and Morris, a United States corporation.

Finally, had minimum contacts not been compellingly established, the Court would also consider the procedural and substantive policies of other nations and their interests in the efficient judicial resolution of the dispute. *Asahi,* 480 U.S. at 115, 107 S.Ct. 1026. *Asahi* cautions that " '[g]reat care and reserve should be exercised when extending our notion of personal jurisdiction into the international field.' " *Id.* (quoting *United States v. First Nat'l City Bank,* 379 U.S. 378, 404, 85 S.Ct. 528, 13 L.Ed.2d 365 (1965) (Harlan, J., dissenting)). This Court appreciates that caution. Nevertheless, it is hard to imagine that another country would have as great an interest as the United States in enforcing United States trademark laws. Moreover, in the interests of comity, foreign nations would likely agree that a United States court should enforce United States trade-

mark violations just as the courts of other nations should enforce the trademark laws of those nations.

Consequently, KCI fails to carry its burden to show that some considerations other than its contacts with this forum make jurisdiction unreasonable. Further, the Court finds that the additional factors that might persuade a court to exercise personal jurisdiction—even in a case where the contacts are less significant than the contacts before this court-are quite persuasive. This Court properly has jurisdiction over KCI.

### III. CONCLUSION

Morris alleges that its trademarks have been infringed upon for at least four years because, among other things, KCI subsidiaries have used the trademarks as meta-tags on their web sites. KCI cannot disavow its connection to the web sites because it copyrights the web sites and owns all of the contents contained therein. In addition, the major market for the cranes and parts identified by Morris's trademarks is in the United States. To the extent that the trademarks are, in fact, used as meta-tags, they are clearly directed at the market for those cranes and parts. Thus, KCI purposefully availed itself of U.S. customers by way of its ownership of web sites directed at those customers. This Court finds that KCI has the necessary minimum contacts to establish personal jurisdiction without offending the traditional notions of fair play and substantial justice.

NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:

Defendant KCI's Motion to Dismiss for Lack of Personal Jurisdiction is **DENIED.**